## D. B. POWERS v. W. M. CLARKSON.

GROWING GRASS, *Not Personal Property.* Wild grass growing on wild, unoccupied, uncultivated land, is a part of the realty, and an attempted transfer of such grass by parol agreement is void, as a conveyance of the grass, under the statute of frauds; and where such grass was destroyed by the cattle of a third person, the owner of the land only, and not the person to whom such grass was attempted to be transferred, can maintain an action for the destruction of the grass.

### *Error from Saline District Court.*

TRESPASS, brought by *Clarkson,* to recover damages for injuries committed by *Powers'* cattle to growing grass on unoccupied land. The case was here on a former appeal, at the January Term 1873; (11 Kas. 101.) On being remanded to the district court, a second trial was had at the October Term 1873 of said court, C. A. H., judge *pro tem.,* presiding. Verdict and judgment for *Clarkson,* and defendant *Powers* brings the case here on error.

*John G. Spivey,* for plaintiff in error.

*J. G. Mohler,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Clarkson against Powers for injuries claimed to have been done by Powers' cattle grazing on certain lands claimed by Clarkson. The land consisted of 800 acres in Lincoln county, 160 of which belonged to Clarkson, 320 to his wife, and 320 to his sister, Mrs. Bean. Clarkson purchased said land for himself, wife, and sister, from one Hoeneck, who sold it as agent of the Kansas Pacific Railway Company. Said land was at that time, and continued to be until the time of the injuries complained of, wild, unoccupied, uncultivated prairie and timbered land. Clarkson testified on the trial: "I took possession of the land when I purchased it, and retained possession. I rode over the land, and told Hoeneck I would take

it. This is what I mean by possession." And the jury that tried the case found by their verdict that Clarkson did not have the actual possession of the land. The land was purchased by Clarkson about the 24th of July 1871, and the injuries complained of were done from that time until sometime in August (probably about the 28th) of the same year. The injuries were done to the whole of the said 800 acres of land, and the verdict of the jury was for Clarkson for the gross amount of $325 damages. There is no way now of ascertaining how much of said $325 damages was for injuries done on the plaintiff's land, and how much of it was for injuries done on Mrs. Clarkson's land, or how much of the same was for injuries done on Mrs. Bean's land. The record is silent upon the subject. Now we shall assume that the plaintiff Clarkson could recover for the injuries done on his own land. And for the purposes of this case we shall also assume that he could recover for the injuries done on Mrs. Bean's land, for Clarkson testifies that he had a power of attorney and agreement (which we suppose was in writing) from Mrs. Bean, giving him the use of her land, although Clarkson did not introduce this power of attorney and agreement in evidence. But the question still remains, could Clarkson recover for the injuries done on Mrs. Clarkson's land? When this case was formerly here we decided that he could not recover for the injuries done on his wife's land; (*Powers v. Clarkson*, 11 Kas. 101, 103.) And we see no good reason for changing our opinion. But the facts of the case are slightly different from what they were when the case was formerly here. In the present case the plaintiff, Clarkson, testifies: " I had the right to the use of the land of Mrs. Clarkson, for taking charge of it, protecting the timber from fire, and paying taxes on it. I was acting as agent of my wife in purchasing of this land. The particulars of the contract between me and Mrs. Clarkson were, that I was to protect timber from being cut out and burned, and also pay what accruing expenses there were, for the use of the land." While in the other case Clarkson testified as to his right to use his

wife's land merely as follows: "By what right I claimed the grass on my wife's land, I don't know that I can tell you better than you know how a man can manage his wife's property." It must be remembered that the injuries for which Clarkson brought this action were done within about a month after Clarkson purchased said land for his wife, and within about a month after he "told Hoeneck that I [he] would take it," and that there is no evidence that Clarkson ever saw the land after he purchased it until after all the injuries complained of were committed. The only question then, as now presented in this case, is, whether Clarkson could by a parol agreement with his wife, obtain such an interest in her land, or in the grass growing thereon, that he could recover damages in his own name for injuries done to the land, or to the grass growing thereon. We suppose it will be admitted that wild grasses growing upon wild, uncultivated land are in all cases a part of the realty. And if so, it would seem that they could not be transferred from the owner to some other person except by an instrument in writing. (Gen. Stat. 505, §§ 5, 6.) And a person having no interest in a thing cannot recover for its destruction. If Clarkson had had the actual possession of the land, probably he could have recovered for the destruction of the grass. For a person in possession of land is in possession of everything growing thereon. And if he had brought an action in the nature of trespass *quare clausum fregit*, which is purely an action for injuries to the possession, he could have recovered for the entire injuries to his possession, which in this case would have included the value of the grass. But Clarkson had no possession of said land. He did not have the actual possession, as was found by the jury; and he did not have the constructive possession, for the constructive possession of unoccupied land always follows the title. Therefore, Clarkson had no interest in the grass of any kind or character whatever. Mrs. Clarkson owned the land, and therefore owned the grass, and constructively she had the possession of the land and of the grass, and therefore she alone can sue

for any injury thereto or destruction thereof. Her supposed agreement transferring the grass to her husband, being merely by parol, was void for that purpose under the statute of frauds. It could at most operate only as a license to him to convert the grass to his own use, and to protect him from any action brought by her to recover from him for the grass, or for trespassing upon her land. But in law, until he should convert the grass to his own use, it would belong to his wife.

The judgment of the court below will be reversed, and cause remanded for a new trial.

All the Justices concurring.