# GILLAND v. THE UNION PACIFIC RAILWAY COMPANY.

Pleading — Parties — Defect of Parties Plaintiff — Waiver — Real Property — Character of Wild Grass, the Natural Growth of the Soil — Action for Negligent Destruction by Fire — Co-tenancy.

1. A defect of parties plaintiff, if it appear on the face of the petition, may be taken advantage of by demurrer; if it does not so appear, the objection may be made by answer; if no objection be taken either by demurrer or answer, the defendant is deemed to have waived the same.

2. At common law an objection on the ground of defect of parties plaintiff was required to be made promptly, as it was regarded and is still regarded under the codes as a dilatory defense.

3. Where defendant's counsel, prior to the trial, had information, though incomplete, respecting the alleged joint interest of another with the plaintiff, and upon the trial the testimony of plaintiff disclosed the facts upon which defendant relied to establish defect of parties plaintiff, the objection should have been made at that time, and an application then made to amend the answer upon trial, setting forth the facts constituting the alleged defect of parties, such an objection not having been theretofore made; and an application to so amend the answer, presented three days after verdict, came too late.

4. In an action for the negligent destruction of grass by fire, notwithstanding that the evidence may have established a.

joint interest in another with the plaintiff in a portion of the grass destroyed, the defect of parties being waived, the plaintiff could recover to the full extent of his own interest; and in such a case an instruction is properly refused which denies the right of the plaintiff to recover for grass owned by him jointly with another person.

5.  The plaintiff could not, however, recover the full amount of damages resulting from an injury to common property if another party had such a joint ownership or interest in the property as to make him a co-tenant therein with the plaintiff.

6.  Possession is sufficient to authorize a recovery for the negligent burning of grass where no permanent injury to the soil is alleged or claimed.

7.  Such possession may be that of the owner in fee or of a mere tenant.

8.  There can not exist a constructive possession unless there is such a title, right, or ownership as to carry the absolute right to possession.

9.  The possession of one co-tenant will be treated as the possession of all, unless otherwise explained.

10.  Where the plaintiff held the land burned over under a lease in his own name, and he had agreed that another should have the right to pasture in the field jointly with him, but there was no assignment of the lease, it is held that no interest in the land was conferred upon the other.

11.  Grass, which is the wild, uncultivated, natural growth of the soil, is a part of the realty.

12.  It is within the power of the owner, or the one entitled to the land, to contract for the separation of the grass from the land, the same to be cut for hay, and as respects such a contract the grass would then partake of the nature of personalty.

13.  The plaintiff was the lessee and in actual possession of a certain tract of land upon which were growing wild, uncultivated grasses.  By agreement with him another obtained the right, jointly with him, to pasture his cattle upon the land. There was no provision for any division of the specific crop of grass, and it was not to be severed from the soil.  The agreement did not comprehend a sale of any portion of the grass as such severed from the soil.  The other party was not in actual possession of the land or grass.  Held, that there was

not a co-tenancy in the grass, and it was not necessary that such other party be joined as plaintiff in a suit for the negligent destruction of the grass by fire.

14. The mere right to use and have the benefit of portions of wild, uncultivated grass, the natural growth of the soil, from time to time, by feeding or depasturing of cattle thereon, confers no right of property therein ; and one having such right of pasturage is not a co-tenant with the owner, either in the land or grass.

[Decided February 1, 1896.]

Error to the District Court for the County of Laramie, Hon. Richard H. Scott, judge.

Action by George H. Gilland to recover damages from the Union Pacific Railway Company, for the negligent destruction of grass by fire. The material facts are stated in the opinion.

*W. R. Stoll* for plaintiff in error.

There was no joint ownership with the plaintiff in the grass destroyed or any portion thereof. That much is established by the evidence. A joint tenancy has a fourfold unity; namely, a unity of title, of interest, of time, and of possession, the interest being acquired by all, and by the same act or conveyance, commencing at the same time, and held by the same undivided possession. (1 Wash. R. Prop., 676; 2 Abb. L. Dict., 546.) A "tenancy in common " is where two or more hold possession of lands or tenements at the same time by several and distinct titles. There must be unity of ·possession (1 Wash. R. Prop., 685; 2 Abb. L. Dict., 545, 546). It is clear that plaintiff was not a joint tenant or tenant in common with any other person. The fact that A pastures his cattle upon the land of B does not make A and B joint owners of the land nor of the grass growing thereon.

*Lacey & Van Devanter* for defendant in error.

Tenants in common and joint tenants must join in any personal action for any injury done to the common prop-

erty. (Gilmore v. Wilbur, 12 Pick., 120; Bullock v. Hayward, 10 Allen, 460; Depuy v. Strong, 37 N. Y., 372.) There was a joint tenancy and common ownership of the grass. As to this fact the evidence is clear and conclusive. Plaintiff is bound by his own testimony. This would be true even of a statement made by counsel in open court. (Oscanyon v. Arms Co., 103 U. S., 261.)

POTTER, JUSTICE.

George H. Gilland brought this action against the Union Pacific Railway Company to recover damages for negligently permitting fires upon its right of way to spread into and upon certain lands alleged to be in the possession of the plaintiff, which fires consumed and destroyed plaintiff's grass growing on said lands; said injury is alleged to have occurred about the 20th day of October, 1891. The damages were placed in the petition at the sum of five hundred dollars.

The answer of the defendant admitted that it was a corporation, and denied generally each other allegation of the petition.

A jury was impaneled to try the case. During the progress of the trial, plaintiff, being examined as a witness in his own behalf, and having testified that the lands upon which the grass was burned were in his possession at the time of the injury, was questioned upon cross-examination respecting the interest of another party in the lands and grass; and the entire controversy now arises upon the testimony of the plaintiff regarding that matter. He admitted in answer to several questions of defendant's counsel that another, whose name was not disclosed, but who was referred to as a German in Nebraska, was jointly and equally interested with him in a portion of the pastures burned over. Upon being recalled in his own behalf, and requested to explain the matter further, he testified as follows:

"I leased that tract of land there, and have the lease there for the tract itself; I entered into an agreement with

this German to let him keep his cattle in that pasture.''
Q. ''That was the sum and substance of that.'' A. ''Yes,
sir.''

On cross-examination: ''In that way he became a joint
owner.'' A. ''He was interested in the pasture; I leased
the pasture, and it was in my name. I entered into an
agreement to let him keep his cattle there.'' Q. ''He
was to build a fence.'' A. ''That was in the agreement.''

Re-direct: ''He was to pasture his cattle there; and it
was part of the consideration he was to build the fence.''
A. ''Yes, sir.'' How much of a fence was thus built, or
when, is not explained.

It is sufficiently disclosed by the evidence that the lands
in question were wild, uncultivated prairie lands, and
devoted to grazing, the grass being the natural growth of
the soil.

On the one hand it is insisted that the testimony of
plaintiff indubitably proves that a third party was jointly
interested with the plaintiff and jointly in possession of
the grass upon a portion of the lands; viz., all the pasture
in section nineteen (19), and that he should have been
joined as a party plaintiff, and not being so joined the
plaintiff can not recover for the injury and destruction of
the grass upon that section of land; while on the other
hand it is urged that the true relation between the parties
was not that of joint interest or co-tenancy, but that the
ownership and possession of the land and grass thereon
was in the plaintiff, and the other party had a mere
privilege, by permission of the plaintiff, to depasture his
cattle thereon, and that this gave him no ownership in the
grass. It is not otherwise claimed, but is apparently con-
ceded, and we think it must be, that the plaintiff also had
the right to use and occupy the lands, enjoy the benefits
of the grass, and depasture his own stock thereon. The
other party had not been given any exclusive right,
interest, or privilege in the lands or grass.

No testimony was elicited, or attempted to be, respect-
ing the time of making the agreement between the plain-

tiff and the other party, excepting that it was after the
plaintiff had leased the tract in his own name, nor as to
the period of time during which whatever rights the other
party had were to commence or terminate.    It does other-
wise appear that the pasture had not been used during the
summer, but was being held by plaintiff for the purpose
of winter pasturage.

The somewhat meager facts, as distinguished from mere
conclusions or generality of statement, disclosed by the
record, is embarrassing, and tends to surround a determi-
nation of the questions involved with much difficulty.

Upon the conclusion of the evidence, the defendant
requested the court to instruct the jury as follows:

"The plaintiff can not recover in this case for grass
owned by him jointly with another person, and you will
leave out of the account all such grass as was owned by
the plaintiff, and any other person or persons jointly."

This instruction was refused, and defendant excepted.
The court, however, did give, at the request of plaintiff,
the following instruction:

"If you should find that the defendant is guilty of neg-
ligence as charged, then the jury should find for the plain-
tiff the amount of damages, if any, which are found to
have resulted from the fire."    To this, also, the defend-
ant excepted.

The court submitted to the jury the following special
question: "In case you find for the plaintiff you will
please state the number of acres burned off in Sec.
19, and also the value of the grass destroyed in said
Sec. 19."

A general verdict was returned for the plaintiff, and the
damages assessed at $315.50.    In response to the ques-
tion submitted by the court, the jury answered that there
were 372 acres burned off in Sec. 19, and that the value
of the grass destroyed in that section was $186.    There-
upon the jury were discharged.

Three days later the defendant filed a motion to file an
additional defense to conform to the proof and in further-

ance of justice, such motion being supported by affidavit showing that the matters then desired to be set up as a defense were unknown to defendant until within about ten hours of the time when the case was called for trial, but that the information at that time obtained was confined to the fact that some German had a joint interest with plaintiff in some of the lands, and that not until the testimony of plaintiff was heard did they learn in what lands there was such an interest. The additional defense thus sought to be interposed, after the trial and verdict, alleged that as to 372 acres in Sec. 19, said land and the grass growing thereon were at the time of the fire in the joint possession of the plaintiff and a certain German, whose name was unknown; that the grass was owned jointly by the plaintiff and said German, and that there is a defect of parties herein in that said German is not made a party.

On the same day the defendant also filed a motion for new trial. Both motions were taken under advisement, and subsequently the motion to file additional defense was sustained, and the motion for new trial was overruled.

The plaintiff excepted to the former ruling, and the defendant to the latter. Thereupon the court ordered that the sum of $186, the value of the grass burned off in Sec. 19, be deducted from the amount of damages assessed by the verdict; and rendered judgment *non obstante veredicto* for the sum of $129.50 the balance, after the making of such reduction. To this, the plaintiff excepted, and in this proceeding such order making the reduction, and entering judgment for a less amount than was returned by the jury, is assigned as error.

Defendant files in this court a cross-petition in error, alleging error in the overruling of the motion for new trial, thereby complaining of the refusal to give the instruction requested by the defendant, and of the giving of the instruction, already quoted.

Whatever may be the correct view to be taken of the other matters which are involved, it is quite clear that the

instruction requested to be given by the defendant was an erroneous statement of the law as applicable to the case then on trial; and in its refusal the court did not err.

A defect of parties plaintiff, if it appear on the face of the petition, may be taken advantage of by demurrer; if it does not so appear, the objection may be made by answer, and if no objection be taken either by demurrer or answer, the defendant is deemed to have waived the same. Rev. Stat., 1887, Secs. 2449–2451, 14 O. St., 448.

At the time of the trial and verdict the defect of parties plaintiff, if any, had been waived by a failure to take advantage thereof by answer. At the common law, such defect was reached by a plea in abatement, and it was the inflexible rule that advantage thereof must be taken promptly. It was regarded, and is still so regarded under the codes, as a dilatory defense. Prior to the trial defendant's counsel had information respecting the interest of another party. The fact that such knowledge was not complete, and the particulars thereof not known, may have been a sufficient excuse for not presenting the objection before trial, although we do not, by any means, regard that as altogether certain; but when the testimony of the plaintiff disclosed the facts upon which the defendant was willing to rely and maintain its proposition, the objection should have been made at that time, and application then made to amend its answer upon trial, setting forth the facts constituting the alleged defect of parties. Without such an answer the instruction requested was erroneous, for the reason, that even if the evidence established a joint interest in another, the defect of parties being waived, the plaintiff could nevertheless recover to the full extent of his own interest, or as it is frequently stated, his damages could be apportioned upon the trial. This principle is well settled, and may be said to be fundamental. Had the instruction permitted the plaintiff to recover to the extent of his interest, and denied his right to recover the amount of the interest of another who was a joint owner with him, it would have been a correct

statement of the law, and it would have been improper to have refused it, if the evidence justified such an instruction, defect of parties having been waived.

The instruction which was given, and excepted to by the defendant, authorizing the jury to find for the plaintiff the full amount of damages resulting from the fire, if they should find the defendant to have been negligent, presents in this court the question upon which the parties take issue.  Such instruction was proper from a consideration of all the testimony, if as a matter of law, the plaintiff had such a possession and ownership of the land and grass in himself as should entitle him to recover the entire damage.  It is incorrect, if another party had such a joint ownership or interest in the property destroyed as to make him a co-tenant with the plaintiff in the land or grass in question.

We are then to consider and determine whether or not there was a co-tenancy between the parties.  Counsel for plaintiff in error contends that the explanation made by the plaintiff ; viz, that he entered into an agreement with this other party to let him keep his cattle in that pasture, shows clearly a mere privilege of pasturing cattle; and opposing counsel insist that such testimony has effect only to explain the manner in which he became a joint owner of the pasture.  There are three other things to be kept in view: First, that plaintiff testifies that he was in possession of the pasture, and held the lease therefor in his own name.  Second, that he testifies another was jointly and equally interested with him in the pasture; and, third, that the sum and substance of such interest was that it was agreed he could keep or pasture his cattle there, but he did not own the pasture.

Permanent injury to the soil does not seem to be alleged or claimed, the only injury complained of is the burning of the grass.  Possession in such case is sufficient to authorize a recovery.  This may be the possession of the owner in fee or of a mere tenant.  We are not unaware of the rule that the possession of one co-tenant will

13

be treated as the possession of all, unless such possession is otherwise explained.

To entitle the other party to any right of action, he must have had either actual or constructive possession. The possession which is constructive merely would be of no avail, if another is rightfully in actual occupancy. The testimony is that plaintiff was in possession; there is nothing to show that the German alluded to was either personally in possession at the time of the fire, or had any of his cattle there, on the contrary, the inference is strong that his cattle were not in the pasture at the time, as it is in evidence that the field had not been depastured during the summer, but was being kept for winter. His possession, therefore, if he had any, must have been constructive; to be constructive he must have had such a title, right, or ownership, as to carry the absolute right to possession. He was not the owner in fee, at least that is not claimed for him, and we can not assume that he was. The lease of the land was taken and held by plaintiff. It follows, therefore, that such other party was not in constructive possession unless he was a co-tenant with plaintiff, so that the latter's possession would be held to be the joint possession of both. The rule just discussed is nicely expressed in the case of Cutting v. Cox, 19 Vt., 518. That was a case of trespass, growing out of the cutting of grass upon a certain tract of land which was claimed by the parties, the dispute arising out of a difference of opinion respecting the boundary between adjoining claims. The plaintiff's undisputed tract or claim was in the possession of a tenant, and it was urged on behalf of the defense that the latter must have been joined. The court say: "If this were the ordinary case of carrying on a farm at the halves, it has not been considered that the owner of the land is so far divested of his possession, that he may not maintain trespass, in his own name, for any injury to the inheritance, as digging stone, or cutting timber. As to the growing crops, in which the parties have a joint interest, the parties are treated as tenants in common, or,

more properly, joint tenants, perhaps, and they should be joined in the action. If they do not join, the non-joinder can only be pleaded in abatement. If not so pleaded, it will only affect the question of damages.'' * * * ''This might be the present case if the land in dispute formed a portion of the premises in the occupancy of Goochy (the tenant) at the time of the alleged trespass. But that does not seem to be the fact. Goochy disclaimed all possession in his own right, and said he would have nothing to do with this land. It is conceded that the land belonged to the plaintiff. It seems clear, if Goochy was not in possession and would not consent to take possession, in his own right, that no action could be maintained in his name. If not, then the plaintiff must be permitted to sue in his own name, or he can not sue at all.'' We doubt the correctness of the statement in the above quotation that the relation between the tenant and landlord as to crops was that of joint tenants rather than tenants in common.

Now, we must consider all the testimony of the plaintiff together that we may correctly interpret the relations existing between him and the third party, and determine the actual interest of such party in the grass in controversy.

Without again adverting to the particulars of that testimony, at this time, we arrive at the conclusion that the right to pasture his cattle in the field jointly with Gilland did not confer upon the former any interest in the land. No assignment of the lease is shown, but is rather negatived. No lease of the land appears to have been made from Gilland to him, and the circumstances do not in our opinion amount to a lease of the land. Was there, nevertheless, a tenancy in common, or co-tenancy in the grass?

The question presented is an exceedingly interesting one, and has some elements of novelty about it. We shall not attempt a résumé of all the decisions touching it, but a reference to a few will, we hope, assist in explaining the reasons which control our judgment.

The grass was the wild, uncultivated, natural growth of

the soil. It was, therefore, a part of the realty. Evans v. Roberts, 5 Barn. and Cres., 830, citing Crosby v. Wadsworth, 6 East., 602; 1 Shouler's Per. Prop., p. 127; 1 Warvelle on Vendors, pp. 177, 178; in re Chamberlain, 140 N. Y., 390; Powers v. Clarkson, 17 Kan., 218; Brantley on Per. Prop., Sec. 34.

It is within the power of the owner, or the one entitled to the land to contract for the separation of the grass from the land, the same to be cut for hay, and as respects such a contract the grass might be said to then partake of the nature of personalty. But, in this case, it was not to be severed.

The cases are numerous, where there has been held to exist a tenancy in common in the crops grown upon land, although one of such co-tenants has no interest in the land. Such cases more frequently arise under contracts for farming land on shares. And it is said that every form of agreement by, which land is let to one who is to cultivate the same and give the owner as compensation therefor a share of the produce, creates a tenancy in common in the crops, and it is declared "the true test seems to lie in the question whether there be any provision, in whatever form, for dividing the specific product of the premises. If there be, a tenancy in common arises, at least in such products as are to be divided."

Bernal v. Hovious, 17 Cal., 542; Freeman on Co-tenancy, Sec. 100; Putnam v. Wise, 1 Hill., 247; Brown v. Lincoln, 47 N. H., 468; Lewis v. Lyman, 22 Pick., 437.

Such division may be of the specific crops themselves after they have been harvested, or of the proceeds after they have been marketed. A citation of authorities on this question is hardly required, but the cases are very numerous where courts have been called on to determine whether under contracts for the cultivation of the land on shares, a tenancy in common of the crops has been created. There was no such agreement in this case, and an examination of these cases alluded to will be useful only as the principle underlying such a co-tenancy in crops may be found therein stated.

It is clear that in the case at bar there was no provision for any division of the specific crop of grass. It was not to be served from the soil at all. The other party could not at any time have cut and taken away the grass or any portion thereof. It is highly probable, indeed, that the greatest value of the grass depended upon its remaining attached to the soil to be used only for the purposes of pasturage. We can not distort the evidence before us into any agreement, executory or executed for a sale of the grass or any portion to the party in Nebraska. If the grass was not to be severed from the soil at any time, except as it might be eaten by the cattle or other live stock placed in the field, we are unable to ascribe to it the character of personalty, or to treat it as property in any sense as distinguished from the land or soil, upon which it had grown spontaneously and without the assistance of the labor of man. The party in question bestowed no labor upon it. True, he built a fence enclosing it, or a part of it, thereby affording protection to its natural growth, and which would also assist in retaining the cattle within certain limits, and prevent their straying. Whether plaintiff was an agistor of the cattle or not, and was required to look after them does not appear. He may have been. That would have been entirely consistent with the testimony, although to hold him as such would require proof of additional facts. Under the evidence, there would seem to have been a mere privilege conferred to pasture cattle in a certain field, when or during what period of time is not stated. By reference to certain fundamental principles we have observed that the evidence does not show any title or ownership of this other party in the grass. If there was none, then it is self-evident there could be no co-tenancy therein, and no constructive possession. The mere right to use and have the benefit of portions of the grass from time to time by the feeding or depasturing of his cattle thereon gives no right of property therein.

An interesting recent case before the supreme court of

Ohio was that of Morgan v. Hudnell, 40 N. E., 716. The suit in that case was for the unlawful killing of a horse by a horse belonging to the other party. Plaintiff had his horse in pasture in a certain field owned by another person. The point involved differed materially from the question here, but incidentally it appeared that plaintiff and other parties who paid the owner a certain price per month kept horses in the same field on pasture; that the owner did not keep his own nor any other animals there, that he did not reserve the right to use the field for his own stock nor for the stock of others, and in such case the court say: "The circumstances are consistent with the idea that Houser (the owner) had for the time these contracts remained in force, given up the possession to those who had thus hired the pasture. In this view, they were then the owners of the growing herbage." And it was also stated, although the matter was not involved, that if the claim were for damage to the herbage, it would probably be held in that State that all the persons so hiring the pasture should join in the action. In such case the herbage seems to have been considered as real estate. It was held, however, that the owner of the horse injured could bring the suit alone, as none of the other parties had an interest in his horse. It will have been noticed that in the case just considered the owner, who occupied the position Gilland does in this case, reserved no possession to himself in the land or pasture or grass. The others had the exclusive possession. Their right accrued because they had, as tenants, the possession, and the right to the possession, of the realty.

One of the earliest cases upon this subject is Wilson v. Mackreth, 3 Burr., 1824. The plaintiff brought an action of trespass for entering his close and digging and carrying away his turf and peat. The right to the soil was in the lord of the manor, but the plaintiff had the exclusive right to dig the turf and take the profit thereof, the owners of the soil and other tenants of the manor had common of

pasture on the lands, or "waste," as it is called in the report of the case, and feed on the mosses as well as on the rest of the waste. The defendant dug and carried away peats. The question was whether the action was maintainable. It was held it was; and the decision was placed upon the ground that the right of the plaintiff to take the turf was an exclusive one, and the defendant had disturbed him in it. In that case the plaintiff's right was not merely in common with the owner of the soil to feed his cattle upon the land, but to dig and carry away, to sever from the soil the turf, and that right was exclusive even of such owner of the soil. The real question was whether trespass *quare clausum fregit* would lie. See Clap v. Draper, 4 Mass., 265.

In the case of Ormbaum v. His Creditors, 61 Cal., 455, there was an application to set aside a homestead in certain lands in insolvency proceedings. Only a portion of the lands were enclosed, within which Ormbaum resided with his family. The portion not enclosed he used at all times for grazing. His neighbors also grazed their live stock therein in common with him, but recognized the land as his. It was contended that Ormbaum did not have possession of the grazing lands, and did not occupy them, but that if he did, it was as tenant in common with the others. The court held that there was no tenancy in common, and sustained the trial court in setting apart the homestead as to all the lands.

The case of Powers v. Clarkson, 17 Kan., 218, is quite in point, and approaches this case more closely than any which have come under our observation. Clarkson brought suit against Powers for injuries claimed to have been done by the cattle of Powers on certain lands claimed by Clarkson. The land consisted of 800 acres, of which 320 acres belonged to his wife. The land was wild, unoccupied, uncultivated prairie and timbered land. Clarkson had testified that when he purchased the land, he rode over it, and said to his vendor he would take it. Upon a former trial it had been decided, Judge Brewer delivering

the opinion, that he could not recover for injuries to his wife's land (11 Kan., 101). Upon a new trial he testified that he had the right to the use of the land of Mrs. Clarkson for taking charge of it, protecting the timber from fire and paying taxes on it. That he was to protect timber from being cut out and burned, and also to pay what accruing expenses there were, for the use of the land. The question under consideration was whether Clarkson had such an interest in his wife's land, or in the grass growing thereon, that he could recover damages in his own name for injuries done to the land or to the grass growing thereon. The court say: "We suppose it will be admitted that wild grasses growing upon wild uncultivated land are in all cases a part of the realty. And if so, it would seem that they could not be transferred from the owner to some other person, except by an instrument in writing. And a person having no interest in a thing can not recover for its destruction. If Clarkson had had the actual possession of the land, probably he could have recovered for the destruction of the grass. For a person in possession of land is in possession of everything growing thereon. And if he had brought an action in the nature of trespass *quare clausum fregit*, which is purely an action for injuries to the possession, he could have recovered for the entire injuries to his possession, which in this case would have included the value of the grass. But Clarkson had no possession of said land. He did not have the actual possession, as was found by the jury; and he did not have the constructive possession, for the constructive possession of unoccupied land always follows the title. Therefore Clarkson had no interest in the grass of any kind or character whatever. Mrs. Clarkson owned the land, and therefore owned the grass, and constructively she had the possession of the land and of the grass, and therefore she alone can sue for any injury thereto or destruction thereof." As to the agreement allowing her husband to use the land, the court say further: "It could at most operate only as a license to him to convert

the grass to his own use, and to protect him from any action brought by her to recover from him for the grass, or for trespassing upon her land. But in law, until he should convert the grass to his own use, it would belong to his wife." The analogy between that case and the one before us can not escape notice. Clarkson had agreed to look after the land, protect it from injury, pay the taxes upon it, and all accruing expenses, for the use of it, and indeed for the use of all of it. But he was not in actual possession, the grass was a part of the realty, and he had not obtained any real ownership upon which could be based a constructive possession. The gentleman, who in the record here is called a German in Nebraska, had agreed to and did build some fencing in consideration that he should have a joint use with Gilland of the land in question for the purpose of pasturing his cattle. His use indeed was limited. He is not shown to have been in actual possession. He had no greater interest in these lands than Clarkson had in his wife's land in the Kansas case.

Bowles v. State (Miss.), 14 So., 261, was a case of criminal trespass. There seemed to be no question but that one Thompson owned the land. It was pasture upon which no one resided, and was fenced with wire and other material furnished by the owner, but was built by others who were said to be tenants of Thompson for the purpose of pasturage. The land was fenced for the purpose of pasturing the stock of the owner and of his tenants. The court say: "It is altogether clear that William Thompson was the owner and in possession of the pasture, and that Kit Thompson and the other tenants of William Thompson have only the privilege of depasturing their stock therein. The appellant's offense consisted in his having entered the pasture by the express direction and authority of William Thompson, and in having driven therefrom a cow and calf belonging to the owner of the pasture, over the protest, and despite the objection of Kit Thompson. This offense is purely imaginary. Kit

Thompson's possession, as well as the possession of all other tenants using such pasture, is the possession of the owner, William Thompson.'' It is evident from the language used in the opinion that there was some kind of agreement between Thompson and the others similar to the one spoken of in the testimony we are considering. That agreement is held to amount to no more than giving to the others a mere privilege of depasturing their stock in the pasture. The owner retained the same right, and it was held that he had the possession. That case, indeed, goes further than we are required to or do go in this case. The reasons upon which we arrive at our conclusion upon this branch of the case, then, are that the other party referred to was not in actual possession of the land or grass, that he had no constructive possession, because the mere agreement to let him pasture cattle on the land jointly with Gilland did not grant to him any title in the land, and he was not therefore a co-tenant with plaintiff in the land; that the grass was a part of the realty, was not to be severed from the soil or specifically divided between the parties, and as a result there could not be a co-tenancy in the grass as personalty, or as property separate and distinguished from the realty. We have not discovered any case which conflicts with our conclusions. The following, each more or less pertinent, we think, fully sustain them:

McKeeby v. Webster (Pa.), 32 Atl., 1096; Luman v. Morse, 42 Ill., 151; G. C. & S. F. Ry. Co. v. Cusenberry, 86 Tex., 525; G. C. & S. F. Ry. Co. v. Wheat, 58 Tex., 133; Sparks v. Leavy, 1 Robt. (N. Y.), 530; Brown v. Wellington, 106 Mass., 318; Russell v. Scott, 9 Cow., 279; Parsons v. Smith, 5 Allen, 578; Giles v. Simonds, 15 Gray, 441; Adams v. McKesson's Ex., 53 Pa. St., 81; Van Hoozier v. St. Joseph R. R. Co., 70 Mo., 145; Gates v. Comstock et al. (Mich.), 65 N. W., 544.

It follows that the court did not err in giving the instruction complained of, but did err in ordering a reduc-

tion from the amount of damages assessed and returned by the jury.  The application to amend the answer alleging a defect of parties plaintiff came too late, and should have been denied, as well upon that ground as for the reason that the evidence did not sustain the allegations of the amendment.  The judgment as entered must be vacated, and the district court for the county of Laramie ordered to enter judgment in favor of the plaintiff in error for the amount of damages assessed by the jury as returned in the verdict.

Reversed and judgment directed in accordance with verdict.

GROESBECK, C. J., and CONAWAY, J., concur.