# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

## JANUARY TERM, 1879.

[No. 892.]

### JULIA A. BLAISDELL ET AL., RESPONDENTS, v. HEISTER STEPHENS ET AL., APPELLANTS.

JOINT LIABILITY—WHEN DOES NOT EXIST.—Where two or more parties act each for himself, in producing a result injurious to plaintiff, they can not be held jointly liable for the acts of each other.

IDEM—INJUNCTION—EASEMENT—DRAINAGE.—The owner of upper land, who has for more than five years enjoyed the privilege of running the waste water used from artificial sources for the purpose of irrigating his land, does not acquire an easement to run the same over the lower lands in such unreasonable or unnatural quantities as to damage the property of such lower land-owners, and an injunction will issue to prevent such injury although the parties enjoined are not jointly liable for the damages.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts sufficiently appear in the opinion.

*R. M. Clarke*, for Appellants:

I. The defendants are in no sense joint wrong-doers. Their acts were several and distinct. There was no co-operation or concert of action between them. (2 Hilliard on

VOL. XIV—2

Torts, p. 247, sec. 10; 19 Johnson, 381; 26 Pa. 482; 57 Id. 142.)

II. The right of drainage is an incident to the ownership of land and the defendants had the undoubted right to its exercise and enjoyment, so long as they allowed the water to take its natural course. (Angell on Water Courses, secs. 108 a, 108 c, 108 d; Washb. 306; 1 Beasley, 280.)

III. The right of easement and servitude for drainage may be acquired by prescription or adverse user; and as more than five years adverse user is shown, defendants' right is established. (*Earl* v. *De Hart*, 1 Beasley, 285; Angell, secs. 108 h, 108 j, 206 a, 372; 13 N. H. 467; 5 Metcalf, 253.)

IV. The defendants could not be sued for the injury which was occasioned by the waste water from the lands of other parties.

*Thomas E. Haydon*, for Respondents:

I. The only question in this case is one of law, whether the maxim, " *Sic utere tuo ut alienum non lædas*," applies to this case.

II. A party has no right to use any more water than is sufficient to irrigate his own land. (*Barnes* v. *Sabron*, 10 Nev. 212.) The claim of prescriptive title can only be acquired by some beneficial use or purpose. (*Weaver* v. *Eureka Lake*, 15 Cal. 271; *McKinney* v. *Smith*, 21 Id. 374.) Defendants had no right or beneficial interest in the water after it passed their land, and plaintiffs acquired no prescriptive right to continue the use of such surplus water. (*Hanson* v. *McCue*, 42 Cal. 303.)

III. A ditch owner is responsible for any injury that is caused by want of due care in the construction or management of his ditch. (*Tenney* v. *Miners' Ditch Co.*, 7 Cal. 339; *Wolf* v. *St. Louis Water Co.*, 10 Id. 541; *Hoffman* v. *Tuolumne Water Co.*, 10 Id. 413; Angell on Water Courses, sec. 336; *Bailey* v. *Mayor of New York*, 3 Hill, 531. Leading Cases on Mines, Minerals, etc., 747, 748; S. & Red. on Negligence, secs. 576–81, and note 3; *Baird* v. *Williamson*, 15 C. B. (N. S.) 376; *Eastman* v. *Amoskeag Co.*, 44 N.

H. 143; Hilliard on Remedies, 462–3, sec. 3 a, 4; 1 Hilliard on Torts (3 ed.), 606–608, secs. 16–18.)

IV. This is a suit in equity. (*Lake* v. *Tolles,* 8 Nev. 286; *Van Vliet* v. *Olin,* 4 Nev. 95; *Minturn* v. *Hayes,* 2 Cal. 590; *Smith* v. *Rowe,* 4 Id. 6; *Tuolumne Water Co.* v. *Chapman,* 8 Id. 392; *Goode* v. *Smith,* 13 Id. 84; *Koppikus* v. *Stat. Cap. Com.,* 16 Id. 248.)

V. The principle of " *Sic utere tuo ut alienum non lædas* " is applicable to ditch owners, but does not apply to ditches for irrigating purposes. (*Richardson* v. *Kier,* 34 Cal. 63; *Richardson* v. *Kier,* 37 Id. 263; *Gregory* v. *Nelson,* 41 Id. 278.

*Boardman & Varian,* also for Respondents.

By the Court, HAWLEY, J.:

The plaintiffs, as owners of a drain ditch constructed in 1876, brought this action to recover damages against defendants for wrongfully flowing waste water from their lands to the injury of plaintiffs' ditch, and for an injunction to restrain such wrongful flowing of waste water. At the close of plaintiffs' testimony the defendants moved for a nonsuit upon the ground, among others, that it did not appear that the injury complained of "was the result of the joint or concurrent act of the defendants." This motion was overruled. The cause was tried before a jury to whom special issues were submitted. The jury answered the special issues, and also found a general verdict in favor of the plaintiffs, assessing the damages at fifty dollars. Both parties moved for judgment upon the special issues found by the jury. The court gave judgment in favor of the plaintiffs, and the defendants appeal.

From the issues found by the jury it appears that the " waste water from the defendants' lands and irrigating ditches " did flow into plaintiffs' drain ditch and that the waste water from the lands and irrigating ditches of Henry Weston and Mary Wall also flowed into plaintiffs' drain ditch. The waste water from the lands and ditches of the defendants has flowed upon the land drained and intersected by the drain ditch of plaintiffs ever since 1864.

With the exception of the eighth day of May, 1877, no more waste or drainage water flowed from the lands and ditches of the defendants than in previous years. The defendants "own, occupy and irrigate separate and distinct tracts or parcels of land each in his own right." They have no drain ditch which they use together in common. The defendant Sessions in 1876 constructed a drain ditch leading from his land to the Truckee river of sufficient capacity to carry, and it did carry, all the waste water brought or used by him on his land with the exception of the eighth day of May, 1877.

The jury failed to find whether the defendants, or either of them, used any more water upon their land than was proper and necessary to irrigate the same, but did find that each defendant used proper and reasonable methods of irrigation. The plaintiff, Henry Stephens, had dams across the slough or channel, in which waste or surplus water from the lands of defendants' flowed, and turned the water out upon his lands to irrigate the same. The grantors of the plaintiff, Henry Stephens, appropriated, claimed and used the waste water flowing from the lands of defendants for irrigating purposes. The plaintiff, Pine, upon the land of the plaintiff, Blaisdell, used the waste or surplus water flowing from the lands of Henry Stephens, for irrigating purposes. The waste water flowing from the lands of defendants flowed upon the lands of the plaintiff, Henry Stephens, in a natural channel or slough, and he turned the water out of said channel upon his land. The waste water flowing from the lands of defendants, after passing over the lands of the plaintiff, Henry Stephens, flowed into an artificial ditch constructed upon the lands of the plaintiff, Blaisdell, and thence into the drain ditch of the plaintiffs. The plaintiffs' ditch was damaged to the extent of seventy-five dollars.

The jury did not know how much it was damaged by the water flowing from the lands of Mary Wall and Henry Weston, but found that it was damaged fifty dollars by the water flowing from the lands of defendants and twenty-

five dollars by the "waste water flowing from plaintiffs' lands."

It does not appear from the evidence that the defendants acted in concert, or that the act of either in any manner produced the act of the other.

We are of opinion that the motion for a nonsuit ought to have been sustained.

The general principle is well settled that where two or more parties act, each for himself, in producing a result injurious to plaintiff, they can not be held jointly liable for the acts of each other. (*Ferguson* v. *Terry*, 1 B. Mon. 96; *Partenheimer* v. *Van Order*, 20 Barb. 479; *Guille* v. *Swan*, 19 Johns. 381; *Bard & Wenrich* v. *Yohn*, 26 Pa. St. 482; *Little Schuylkill Navigation Railroad and Coal Company* v. *Richards*, 57 Id. 142.)

The case last cited is certainly analogous to the case at bar. There the suit was brought for damages to a dam filled by deposits of coal dirt from different mines on the stream above the dam, and the plaintiffs sought to hold the defendant liable for the whole damages caused by the deposits. Speaking of the results that would follow if the defendant was held liable for the acts of others, the supreme court say: "It is immaterial what may be the nature of their several acts, or how small their share in the ultimate injury. If, instead of coal dirt, others were felling trees and suffering their tops and branches to float down the stream, finally finding a lodgment in the dam with the coal dirt, he who threw in the coal dirt and he who felled the trees would each be responsible for the acts of the other. In the same manner separate trespassers who should haul their rubbish upon a city lot, and throw it upon the same pile, would each be liable for the whole, if the final result be the only criterion of liability. But the fallacy lies in the assumption that the deposit of dirt by the stream in the basin is the foundation of liability. It is the immediate cause of the injury, but the ground of action is the negligent act above. The right of action arises upon the act of throwing the dirt into the stream—this is the tort, while the deposit below is only a consequence. The liability, therefore, began above

with the defendant's act upon his own land, and this act was wholly separate and independent of all concert with others. His tort was several when it was committed, and it is difficult to see how it afterwards became joint, because its consequences united with other consequences. The union of consequences did not increase his injury. If the dirt were deposited mountain high by the stream, his dirt filled only its own space, and it was made neither more nor less by the accretions." In this case, the right of action arises, if at all, upon the act of allowing the waste water to run into the slough from the land of the defendants. This is the tort. The damage to the drain ditch below is only a consequence. The act of defendant, Sessions, in allowing the waste water to run from his land was separate and independent from the act of defendant, Stephens, in allowing the waste water to run from his land, and neither of them could be held liable in damages for the wrongful acts of the other.

The judgment of the district court is reversed and the cause remanded for a new trial.

RESPONSE TO PETITION FOR REHEARING.

By the Court, HAWLEY, J.:

A re-examination of all the testimony contained in the transcript strengthens the convictions expressed in the former opinion, that "it does not appear from the evidence that the defendants acted in concert, or that the act of either, in any manner, produced the act of the other." This being true, it follows, for the reasons stated in our former opinion, that the action at law can not be sustained as against both defendants. A rehearing was granted, principally upon the ground that—conceding the correctness of the views expressed in the opinion—it might not necessarily follow that the nonsuit should be granted as against both defendants. The plaintiffs might have the right to dismiss as to one of the parties and proceed against the other. This question, however, has not been relied upon by the respondents.

We are asked to decide the equitable rights of the re-

spective parties, and determine whether or not, upon the facts disclosed in the record, the plaintiffs are entitled to an injunction.

The respondents admit, as the authorities declare, that the owner of an upper tract of land has an easement in the lower tracts to the extent of the natural flow of water from the upper to and upon the lower tract of land.

It is unnecessary to discuss the important, delicate and interesting questions that, under the improved methods of irrigation and improvement of agricultural lands, are liable to be raised as to the general right of the owner of an upper tract of land to flow the waste or surplus water used for irrigation from artificial means upon the lower lands of his neighbors. So far as the present case is concerned, it only presents the single question, whether the owner of the upper land, who has for more than five years enjoyed the undisturbed privilege of running the waste waters used from artificial sources for the purpose of irrigating his land, thereby acquires an easement by prescription to run the same over the lower lands in such unreasonable and unnatural quantities as to damage a drain ditch recently constructed by parties owning land below him, for the purpose of carrying off such surplus or waste water, as well as the waste water used in irrigating their own land.

The jury found, as stated in the former opinion, that, with the exception of the eighth of May, no more water flowed from defendants' lands .than in previous years, and although they failed affirmatively "to find whether the defendants, or either of them, used any more water upon their land than was proper and necessary to irrigate the same," yet their other findings would seem to imply such to be the fact. But, be that as it may, the court, in its judgment and decree, did expressly find that, on the eighth of May, the defendants did allow an "inordinate quantity" to flow down over plaintiffs' lands. There is ample testimony to sustain this finding.

Under the decree the defendants are permitted to irrigate their lands by all reasonable use of the waters and by all convenient methods or systems of irrigation, and are only

bound to so regulate the enjoyment of this right "as not to materially injure the drain ditch of plaintiffs below their respective lands."

We are of opinion that upon the facts disclosed by the record the plaintiffs are certainly entitled to the injunction as decreed by the court. Upon a review of the questions involved in this case we are also of the opinion that respondents should be allowed, within fifteen days after the filing of the remittitur herein, if they so desire, to remit the judgment for damages, and if so remitted then the decree ordering an injunction should remain. Otherwise a new trial must be granted.

The judgment of the district court, in so far as it awards damages against the defendants, is reversed, and the cause remanded for such further proceedings as are indicated in this opinion would be proper.

The costs of this appeal to be taxed against respondents.