## MAU v. STONER ET AL.

WATER AND WATER RIGHTS — IRRIGATING DITCHES — PARTNERSHIP
DITCH—WATER DISTRIBUTER—JURISDICTION—TORTS—DIVERSION OF
WATER—EVIDENCE—BURDEN OF PROOF—PLEADING—AMENDMENT—
PARTIES—MISJOINDER—INSTRUCTIONS.

1. In the statutory proceeding for the appointment of a water
distributer upon a ditch held in joint ownership, the juris-
diction of the court does not depend upon the consent of
the parties, whether heard by the court, the judge in
chambers or the court commissioner.

2. In such proceeding jurisdiction of the subject matter is ob-
tained upon the filing of a petition setting forth the fact of
joint ownership of the ditch between plaintiff and defend-
ant, and the inability of the owners to agree relative to the
distribution of the water therein, and praying the appoint-
ment of a distributer, as provided in the statute, to take
charge of the ditch and distribute the waters thereof to
the parties entitled thereto.

3. A denial of joint ownership in a proceeding regularly brought
under the statute for the summary appointment of a water
distributer upon an alleged joint or partnership ditch does
not oust the court of jurisdiction; the question of joint
ownership must be determined as a question of jurisdic-
tion, and when determined does not amount to a final ad-
judication as to the interests or titles of the parties except
for the purposes of that particular proceeding.

4. The mere fact that upon his petition alleging a joint owner-
ship with another in an irrigating ditch one has secured
the appointment of a distributer of the water in the ditch
pursuant to the statute is not in itself sufficient to render
him liable in a suit for damages for alleged wrongful acts
of the water distributer in controlling the ditch and dis-
tributing the water, upon the ground that such wrongful
acts were instigated by him.

5. The mere fact that a plaintiff in a proceeding for the appoint-
ment of a water distributer upon an alleged joint irrigating
ditch received water from the ditch under a claim of right,
pursuant to the direction of the person appointed as water
distributer, does not impart knowledge to the one so re-
ceiving the water that the distributer acted unfairly to
others entitled to water from the same ditch, so as to
render him liable in damages for alleged unfair and wrong-
ful acts of the distributer.

6. A petition in a suit against several defendants for damages for the wrongful diversion of water from an irrigating ditch, which charges that the defendants committed the tortious and injurious acts, alleges a joint liability.

7. Where misjoinder of separate causes of action or of parties defendant is not apparent upon the face of the petition, the defect must be raised by answer, or it will be waived.

8. Where several defendants were charged as joint tort feasors in a suit for damages for the wrongful diversion of water from an irrigating ditch, and plaintiff's evidence failed to show any joint act or liability, but, if anything, separate and independent acts of one or more of the defendants, an amendment to the answer alleging misjoinder of parties defendant was properly allowed at the close of plaintiff's case, upon the filing of affidavits showing that the fact that plaintiff would rely upon proof of separate acts or a separate liability was unknown to the defendants prior to that time.

9. In a suit for damages against several defendants charged jointly with the wrongful diversion of water from an irrigating ditch, where plaintiff's evidence failed to show any joint act of the defendants, and the answer alleged misjoinder of parties defendant, it was proper, on request of defendants at the close of plaintiff's case, to instruct the jury to return a verdict for the defendants on the ground "that the defendants were improperly joined because the undisputed evidence shows the acts complained of were not the joint acts of any one defendant with the other, but were the several separate, independent acts of each, without unity of design or concert of action."

10. A joint liability for damages for alleged wrongful diversions of water from an irrigating ditch is not established by proof that several defendants separately and independently, at different times and places, without unity of design or concert of action, took water from the ditch for the irrigation of their separate tracts of land.

11. Several defendants jointly sued for damages for alleged wrongful diversions of water from an irrigating ditch to the injury of plaintiff, who was entitled to a certain quantity of water from the ditch by priority of right, joined in an answer denying any wrongful act, but alleging separate ownership of distinct tracts of land along and under the ditch and a separate right, under a certain contract between the plaintiff and one of the defendants, to the excess of water over the quantity to which plaintiff was entitled, and

that they had respectively lawfully applied such excess and no more to the irrigation of their several parcels of land. *Held,* that the mere fact that the defendants had so joined in the answer was not sufficient to render them jointly liable for an injury suffered by plaintiff, if any, from the separate and independent acts of the several defendants, at different times and places, in diverting water from the ditch for the irrigation of their separate and respective tracts of land.

12. Where the several owners of different tracts of land along and under an irrigating ditch, claiming a right to use the excess of water in the ditch over the quantity to which plaintiff is first entitled, act separate and apart, at different times and places, and not in pursuance of any design or purpose by all of them to deprive plaintiff of his rights, in diverting water from the ditch for the irrigating of their separate tracts of land, they are not jointly liable for the injury, if any, resulting to plaintiff from his deprivation of the water to which he is entitled through such separate diversions. In such case each would be liable for his own trespass or wrong, and neither would be liable for the trespass or wrong committed by the other, even though the damages sought were the result of such independent acts or wrongs.

13. Every tort is complete in itself, and all who participate in its commission are jointly and severally liable for the damages resulting therefrom; and a recovery may be had against one or more joint tort-feasors sued jointly.

14. Plaintiff, claiming sole ownership of an irrigating ditch, sued for damages for alleged wrongful diversions of water therefrom, and sought to recover in part upon proof that defendant had closed the headgate temporarily while engaged in cleaning out the ditch. Defendant claimed under a contract, which was introduced in evidence by the plaintiff, granting him an interest in the ditch and the right to use water therefrom for irrigation upon his enlarging the same sufficiently to carry the water to be used by him in excess of the quantity appropriated by plaintiff. *Held,* that to prove the act of repairing the ditch and the incidental closing of the headgate to be tortious, it was incumbent upon plaintiff to show, as alleged in his reply, that the condition precedent to the acquirement of an interest by defendant, viz.: the enlargement of the ditch, had not been performed, and in the absence of proof to that effect, or of evidence tending to show that the repairs were unnecessary

or unreasonable at the time, it was proper to assume that defendant was entitled to clean the ditch and close the headgate for that purpose, if necessary, even though, while so engaged, it deprived plaintiff of the use of the water.

[Decided November 17, 1906.   Rehearing denied April 15, 1907.]
(87 Pac., 434;  89 Pac., 466.)

Error to the District Court, Uinta County, Hon. Charles ·E. Carpenter, Judge.

Action brought by Frank A. Mau against John W. Stoner, Aaron Stoner and Victor Forgeon.   From a verdict and judgment in favor of defendants, the plaintiff brought error.   The facts are stated in the opinion.

*J. H. Ryckman* and *S. T. Corn*, for plaintiff in error.

The gist of the action is the destruction of plaintiff's crops, not the wrongful diversion of the water; the injury was the combined result of the diversions of the water of plaintiff by the defendants at divers times.   (Murray v. McGarigle, 69 Wis., 491.)   The law does not require that plaintiff show some conspiracy or combination between the defendants as a condition to recovery.   The defendants were properly joined pursuant to the Code provisions and a separate judgment would be allowable if warranted by the evidence.   (R. S., Secs. 3480, 3535, 3752;  15 Ency. Pl. & Pr., 583, 746;  Whittaker's Ann. Code, 92, 115, 232, 580;  Orsborn v. McClelland, 43 O. St., 284;  People v. Cram, 8 How. Pr., 151;  Palmer v. Davis, 28 N. Y., 242;  McIntosh v. Ensign, 28 N. Y., 169;  Smith v. Bank, 26 O. St., 141;  Humphries v. Huffman, 33 O. St., 399, and cases cited;  Montford v. Hughes, 3 E. D. Smith, 591;  11 Ency. Pl. & Pr., 882;  Stedeker v. Bernard, 102 N. Y., 327;  Pomeroy's Rem. (2d. Ed.), 281, 307, 308.)   Plaintiff was entitled to judgment against all defendants, for all were proven guilty.   The petition does not allege a joint liability.   Misjoinder would not defeat recovery against those proven liable.   (21 Ency. Pl. & Pr., 806;  Greer v. Mezes, 24 How. (U. S.), 268.)   All concerned in inflicting

the injury are individually liable.   (Cases cited *supra,* and Bliss Code Pl. (2d Ed.), 82, 83; Ellis v. Howard, 17 Vt., 330; Cooley's Torts (2d Ed.), 153, 156; Ry. Co. v. Mc-Whirter, 77 Tex., 356; Van Steenburg v. Tobias, 17 Wend., 562; 15 Ency. Pl. & Pr., 557-559; Bish. Non-Cont. L., 518, 522; R. Co. v. James, 73 Tex., 12; Boyd v. Watt, 27 O. St., 259; Saint v. Guerrerio (Colo.), 30 Pac., 335; Hillman v. Newington, 57 Cal., 56; Slater v. Mersereau, 64 N. Y., 138; Webster v. R. Co., 38 N. Y., 260; Learned v. Castle, 78 Cal., 454; Matthews v. R. Co., 22 L. R. A., 261; Jack v. Hudnall, 25 O. St., 255; Peoria v. Simpson, 110 Ill., 294; Stone v. Dickinson, 5 Allen, 29; Hurrahan v. Cochran, 42 N. Y., 1030; Riverside Mills v. Lanier, 45 S. E., 875.)   All having contributed to the injury, the damages would be what the most culpable ought to pay.   (28 Ency. L., 611, 613.)   Running all through the best considered cases there are two principles stated: (1) That where a person undertakes to do an unlawful act resulting in injury to another, the fact that others contributed to that result would not exonerate him from the consequences; (2) that if the defendants unite or participate in causing a single injury, even though acting independently of each other, and, therefore, without any common purpose, or unity of design or concert of action, they are jointly and severally liable.   (Bunting v. Hogsett, 139 Pa. St., 363; Klander v. McGrath, 35 Pa. St., 128.)   Not having demurred, the defect of misjoinder, if any, was waived.   (R. S., Sec. 3537.)   But it was not necessary for plaintiff to establish a joint liability.   (Galligan v. De Lorenzo, 92 N. Y. S., 268; Sweeney v. Hawley, 126 Fed., 97; Dobbs v. Purrington, 136 Cal., 70; Cuddy v. Horn, 46 Mich., 596; Simmons v. Everson, 124 N. Y., 319; Watson v. Smelting Co., 79 Pac., 14; The Debris Cases, 16 Fed., 25; Morris v. Bean, 123 Fed., 618; Water Co. v. Santa Barbara, 77 Pac., 1113; 11 Ency. Pl. & Pr., 852.)

There is a class of cases, however, where there is neither negligence nor wrongful intent on the part of the wrongdoers, nor privity, nor concert, nor a common purpose, nor

community in the wrong doing, nor unity of design, and yet all the defendants are jointly and severally liable because it is impossible to distinguish the portion of the injury caused by each. (Allison v. Hobbs, 96 Me., 26; Martin v. Farrell, 72 N. Y. S., 934; R. Co. v. Shanley, 107 Mass., 577; Corey v. Havener, 65 N. E., 69; Turner v. Hitchcock, 20 Ia., 316; Sloggy v. Dilworth, 8 Am. St., 656.)

The objection as to misjoinder made at the trial came too late. (Mackay v. Fox, 121 Fed., 487; Burbank v. Bigelow, 154 U. S., 558.) The agreement to enlarge the ditch shows concert of action, unity of design, community of interest and such privity among the defendants, if there were nothing else in the record, as to impose upon the court the duty to instruct the jury that the defendants were joint tort-feasors and jointly and severally liable to the plaintiff for the damage he had sustained, and much more than enough to put the defendants upon their proof upon that proposition. The taking of the water by John W. Stoner was presumably for all the parties to be benefited under the contract between Mau and Stoner. This with other items of evidence was sufficient to require the facts to be submitted to the jury; and the court erred in directing a verdict. But if the petition charged the defendants "jointly" with the diversion of plaintiff's water, and if the defendants in taking it, which they admit in the joint answer, took it independently of one another, they ought to have pleaded that fact each for himself in a separate answer, and not having done so they waived the objection to the petition and lost the right to say on the trial that they took it otherwise than as alleged in the petition.

Water rights in this state are matters of public record and if properly pleaded they cannot be denied by the opposing party, at least on information and belief, and thus a most important issue in this case could have been disposed of on the pleadings. (Mulcahy v. Buckley, 100 Cal., 484; Buller v. Sidell, 43 F., 116; Roblin v. Long, 60 How. Pr., 200; Union Co. v. Chippewa, 47 Wis., 246.)

Possession and ownership of land may be proven by parol. (DeWold v. Williams, 69 N. Y., 622; Reed v. Price, 30 Mo., 422; Bedden v. Clark, 76 Ill., 338; Knapp v. Smith, 27 N. Y., 277.)

Does the fact that the joint answer of the defendants shows they jointly petitioned the District Court to have Somsen appointed to take water from the Mau Canal and give it to them tend to prove a "combination," or "confederation," or a "concert" among the defendants to take water from the Mau Canal? If so, it was error to direct a verdict for the defendants. The answer showing these things, it was alone sufficient to put the defendants upon their proof and to send the case to the jury upon the question as to whether the defendants were joint tort-feasors. It was the duty of the court to construe the contract under which the defendants claim to have acquired an interest in the Mau Canal, and to construe the pleadings in the case and as matter of law to have said these contain some evidence of privity among the defendants, some evidence of community of interest, of concert of action; how much the court will leave to the jury to consider with all the evidence in the case. Where there is any evidence, though slight, tending to establish plaintiff's case a peremptory instruction to find for defendant is error. (Hughes Instr., 129, 130; 6 Ency. Pl. & .Pr., 684, 685; Cummings v. Helena Co., 68 Pac., 852; Lamb. v. R. Co., 7 Allen, 98; Todd v. R. Co., id., 207; Witherby v. Sleeper, 101 Mass., 138; Penn. Co. v. Backes, 24 N. E., 565; Ry. Co. v. Cox, 145 U. S., 593; Mau v. Stoner, 10 Wyo., 125; Bernhardt v. Rensselaer, 36 Barb., 165.)

The essence of this case is, did the plaintiff lose his crops by the acts of these defendants? And if so, whether each of the defendants contributed to the injury, was a question for the jury. (Corey v. Havener, 65 N. E., 69; R. Co. v. Shanley, 107 Mass., 207; Owens v. Derby, 3 Ill., 26; 2 Hilliard, Torts, 296; Turner v. Hitchcock, 20 Ia., 316; Ellis v. Howard, 17 Vt., 330; Brown v. City, 88 N. W.,

1070; Allison v. Hobbs, 96 Me., 26; Martin v. Farrell,. 72 N. Y. S., 934.)

The court should have received when offered by plaintiff the record of a previous case that came to this court between these parties. That record has not been brought into the bill of exceptions, but this court will take judicial notice of its own records. (Stallcup y. Tacoma, 13 Wash., 141; Gaslight Co. v. Dist. Col., 161 U. S., 316; R. Co. v. Leath, 84 Fed., 105.) A judgment bars not only every defense actually set up, but every defense which. might have been urged. (Crownell v. Sac, 94 U. S., 351; Burlen v. Shannon, 99 Mass., 200; Howard v. Huron, 5 S. Dak., 539.)

The court erred in striking out the evidence pertaining to the appointment of the water distributer. The defendants were liable for the acts of that party, they having secured his appointment. (Connally v. Woods, 31 Kan., 359; Sprague v. Kneeland, 10 Wend., 161; Cooley on Torts, 156; 3 Ency. L., 245, 246.) The defendants. pleaded the appointment of Somsen as a complete defense. The plaintiff replied that the appointment was void and no defense, and was prepared to prove it. This the court would not permit and the ruling was error. The decree is void insofar as it attempts to award the defendants any interest in the Mau Canal, or any of the water therein, for four reasons: (1) Because it is vague and uncertain. It gives them the water in the canal above five cubic feet, "if any." This phrase means nothing as a finding of fact or a conclusion of law, and no valid decree can be based upon it. (5 Pl. & Pr., 1063; 11 id., 933.) (2) Because there is no evidence to base such a decree upon. (3) Because the decree does not conform to the pleadings. (3 Pl. & Pr., 357; 5 id., 956; 11 id., 868, 873.) (4) Because neither John W. Stoner nor his privies, the other defendants, can acquire any interest in the Mau Canal unless it is established by competent proof that he enlarged the Mau Canal according to the terms of the contract introduced in evidence by the plaintiff and as construed by this court in Stoner v. Mau, 11 Wyo., 366.

The court found that the plaintiff is entitled to the in-junction as prayed for in his petition and granted the same upon the plaintiff's evidence. The costs, therefore, should not be taxed against the prevailing party. Section 3792 gives the court no such power in such a case. (5 Pl. & Pr., 184, 185; 18 O. Cir. Ct., 479.)

*John W. Lacey,* for defendants in error.

The principle is elementary that a complaint in tort against several defendants, unless it distinctly points out that the action is for several and separate torts, alleges a joint tort. The particular complaint here is that the defendants deprived the plaintiff of water during the season named. The evidence for plaintiff showed the commission of no joint tort by the defendants, and hence the application to amend the answer.

The defendants would not be liable for the acts of the water distributer unless his appointment was void and without jurisdiction; but there is no evidence even tending to prove a want of jurisdiction of such appointment or that it was for any reason void, nor was any such evidence offered.

It is claimed that the decree is void in so far as it attempts to award to the defendants any surplus of waters after the plaintiff has taken five feet per second. It is claimed that this is void. (1) For uncertainty. To our thought nothing could be more certain than the finding and decree. Five cubic feet per second are awarded to the plaintiff and the overplus as between the plaintiff and defendants to the defendants. This is in harmony with Bradfield v. Dewell, 48 Mich., 9, cited by counsel. (2) That there is no evidence to support this finding. It is a sufficient answer to point out that while the motion for a new trial attacks the verdict given by the jury for alleged insufficiency of the evidence, it makes no such attack upon the finding. And the verdict and finding were two entirely separate matters. Besides, there was evidence to support the finding.

The costs taxed against the plaintiff were the costs upon the issue as to damages which was found against him. Upon the issue concerning the injunction neither party recoverd costs, and it is not shown by the record that there were any costs expended by the plaintiff upon that issue. The court's action as to costs was, therefore, clearly within the authority of Sections 3791 and 3792, R. S. 1899. Complaint is made that the court excluded the records of two other cases, one between the present plaintiff and John W. Stoner, and one between the present plaintiff and Victor Forgeon. The answers to this complaint are numerous and complete. We will call attention to but one of them. Neither of the records referred to is in any way in the record here, so the plaintiff furnishes no evidence to prove any error in the ruling of the court excluding them. But it is contended that the court must take judicial notice of what is in these records. If that be true, then it was not necessary to introduce the records in evidence and their exclusion is not error. (Shollenberger v. Penn., 171 U. S., 1; Com. v. Marzynski, 149 Mass., 68; Ry. Co. v. Johnson (Tex.), 29 S. W., 428; Austin v. State (Tenn.), 48 S. W., 305; White v. Ins. Co. (Me.), 22 Atl., 167; State v. Main, 69 Conn., 133.) Courts will not, however, take judicial notice of the contents of their own records in other causes. (U. S. v. Manderson (C. C. A.), 51 Fed., 501; Ry. Co. v. Andrews, 34 Kan., 563; Enix v. Miller, 54 Ia., 551; Loomis v. Griffin, 78 Ia., 482; Garretson v. Farrall, 92 Ia., 728; Anderson v. Cecil (Md.), 28 Atl., 1074; 1 Whart. on Ev., Sec. 326; Caldwell v. Bruggerman, 8 Minn., 286; McCormick v. Herndon, 67 Wis., 648.)

No error can be predicated upon the refusal by the court to allow plaintiff to propound even a so-called preliminary question to himself or his own witness unless the question is followed by a statement of relevant and material matter which it is proposed to prove in answer to the question. (Tootle v. Petrie, 8 S. D., 19; Carpenter v. Willey, 65 Vt., 168; Murry v. Hennessey, 48 Neb., 608; Kern v. Bridwell, 119 Ind., 226; Ladd v. Coal Co. (C. C. A.), 66

Fed., 880; Huggins v. Hughes (Ind.), 39 N. E., 298.)
Each of the defendants as shown by the evidence owned
his own separate lands, and each used water through his
own separate lateral upon his own lands.   There is no
evidence whatever of any intent to injure the plaintiff.
The wrongs complained of do not come within the class of
intentional and malicious wrongs.   They come rather within
the class of conflicting rights between the plaintiff and the
several defendants.   The intent, so far as any intent is
shown, is merely an intent by each defendant to benefit his
own lands by using the water upon them.   This cannot in
any way be tortured into a joint intent to injure the plaintiff
such as has been held in some cases to constitute a joint
tort.   It is claimed by the plaintiff that the fact that the
defendants acted in concert in securing the appointment of
an officer to distribute the water is evidence that they acted
in concert, when each took the water for his own use.   But
to state this proposition is to answer it.   In their applica-
tion for a water distributer the defendants were committing
no tort, but were pursuing a remedy provided by law and
in an entirely lawful way.   The regular and lawful pursuit
of this remedy is no evidence whatever that the defendants
were jointly seeking to deprive the plaintiff of any water
which belonged to the plaintiff.   The presumption is, on
the contrary, that they were seeking to have all of the
waters of the canal divided accurately and in absolute ac-
cordance with the rights of the parties, giving to the plain-
tiff his entire share of the water.   Joint ownership of the
ditch with the several rights in the several parties to water,
each in his own proportion and upon his own land, would
not make the act of one of the defendants in taking water
for his own lands the act of the others and for which the
others would be jointly liable with the one so taking the
water.   But plaintiff sought to recover for the acts of the
water distributer while he had control of the ditch.   That
was a joint wrong of the defendants, if any.   That being
the gravamen of the charge as it was presented in the
petition prior to the trial, a demurrer for misjoinder could

not have been sustained. Indeed no demurrer could ever have been sustained, because the petition was properly brought against all the defendants so far as it demanded equitable relief. For that purpose the defendants were properly joined. Nor could a motion to dismiss the action as to either of the defendants have been sustained, because that would be to deny the equitable relief against the defendant dismissed. So long as the plaintiff was prosecuting his case even upon the action for damages and urging as its gravamen that the distributer was merely the agent of the defendants, and that the defendants conspired with him and directed his acts in violation of law, even an answer that the acts were not the joint acts of the defendants, but were separate and several wrongs, if wrongs at all, could not have been sustained. The presumption was, therefore, conclusive that the action was not for separate liability. In that condition of the case, the offer to amend came at the earliest possible moment, when, at the close of plaintiff's case, it developed that separate and not joint acts and liability were relied on by the plaintiff. A proper showing was made for the amendment and it was properly allowed.

In all cases, the allowance of an amendment on the trial is matter within the sound discretion of the court, and the ruling of the court permitting an amendment will not be reversed unless there is great and palpable abuse of discretion and denial of justice. (Chapman v. Barney, 129 U. S., 677; McAllaster v. Clark, 33 Conn., 253; Gilman v. Emery, 54 Me., 460; Staley v. Thomas, 68 Md., 439; Augur Steel Axle Co. v. Whittier, 117 Mass., 451; Davis v. New York, &c., Co., 110 N. Y., 646; Brock v. Bateman, 25. O. St., 609; Baughman v. Hale (Kan.), 25 Pac., 856; Smith v. Fullinwieder (Kan.), 19 Pac., 314; Ward v. Parlin (Neb.), 46 N. W., 529.)

The motion for a new trial does not assign separately the ruling of the court in permitting the amendment, but assigns this matter in connection with the ruling of the court in directing a verdict. An assignment of error in a motion for a new trial, or elsewhere, which joins in a single as-

signment several distinct rulings, is not available for any of the rulings unless they were all erroneous.

It is true that at law every one is liable for an injury caused, or directly and materially contributed to by his negligence, unless the plaintiff likewise contributed. But that is not this case. Here there is no concurring negligence. The act of each defendant, if wrongful, accomplished a separate damage to plaintiff, although the same crops, if any, were injured. And each would be liable for his own wrongful act, but not for the wrongful act of the other defendants, since no joint act or concert of design or action was shown by the evidence. The court, therefore, properly directed a verdict for defendants, upon the issues then in the case. (Miller v. Highland D. Co., 87 Cal., 430; Evans v. Ross, 8 Pac., 88; Blaisdell v. Stephens, 14 Nev., 17; Heinlen v. Heilborn, 71 Cal., 561; City v. Slangstrom, 53 Kan., 438; The Debris Case, 16 Fed., 30; Mining Co. v. Danberg, 81 Fed., 89; Larkins v. Eckwurzel, 42 Ala., 322; Mexican Nat. Construction Co. v. Middlegge (Tex.), 13 S. W., 257; Huddleston v. Borough of West Bellevue, 2 Atl., 200; Nav. Co. v. Richard's Admr., 57 Pa. St., 142; Seely v. Alden, 61 Pa. St., 302; Swain v. Cooper Co. (Tenn.), 78 S. W., 93; Smith v. Day (Ore.), 65 Pac., 1055; Strawbridge v. Stern (Mich.), 70 N. W., 331; Harriott v. Plimpton (Mass.), 44 N. E., 992; Gallagher v. Kemmerer, 144 Pa. St., 509; Gould on Waters (1st Ed.), Sec. 222.)

SCOTT, JUSTICE.

Plaintiff in error brought this action in the District Court of Uinta County against the defendants in error for the double purpose of recovering damages for an alleged trespass and for injunctive relief. A jury was empaneled and sworn in the case for the purpose of passing on the question of trespass and assessing damages therefor, if any should be shown by the evidence. When the plaintiff rested his case the defendants moved the court for permission to amend their answer, and having obtained such permission

filed their amendment and then moved the court to instruct the jury to return a verdict in their favor, which motion was granted. Judgment was rendered for the defendants upon the issue as to trespass and for costs, and also decreeing and granting the plaintiff injunctive relief as prayed. The petition contains the following among other allegations, viz.: "Plaintiff alleges that he is the sole and exclusive owner of said canal and all the water running therein, and that neither of defendants, nor anyone else, has any interest whatsoever in said ditch or any of the water running therein. That said water was appropriated by the plaintiff and conducted through said ditch and was also used by the plaintiff for domestic, stock and other beneficial purposes, and has ever since been and now is the sole water supply of plaintiff for all the purposes aforesaid. That between the first day of May, 1902, and the 12th day of July, 1902, the said defendants, without any rights whatever, and without plaintiff's consent, wilfully, wantonly and maliciously diverted all of plaintiff's water from the said canal and appropriated it to their own use, and deprived plaintiff of the use thereof to his damage, etc." Then follows an allegation of ownership of a tract of land lying under and irrigated by and from said canal and damage to crops growing thereon by reason of said alleged wrongful acts. The petition further says: "That the defendants threaten to continue to divert and appropriate to their own use all the plaintiff's water as aforesaid, which threat, if carried out, will render the plaintiff's said tract wholly unfit for tillage or cultivation, and will destroy the entire value of said land and produce great and irreparable injury to the plaintiff." The defendants joined in their answer and claim several ownership to distinct and separate parcels of land lying along and under said ditch and above plaintiff's land and also deny that the plaintiff was entitled to the excess over and above five cubic feet of water per second of time; allege that they were, pursuant to the provisions of a certain contract hereinafter referred to, the owners of such excess, and that they were, as they had a lawful right to do, applying such excess and

no more to the irrigation of the crops upon their several parcels of land; that the distribution of the water flowing in the canal was according to the rights of the respective parties and by one Somsen, who had theretofore been regularly and in pursuance of law appointed water distributer to divide and apportion the water of the ditch according to the respective rights of all parties interested therein. All other matters alleged in the petition are put in issue. The reply alleges that the order appointing said Somsen was wholly void and without authority of law, and that it was obtained at the instance of the defendants, and that Somsen, pretending to act under the void order, but in fact at the instance and instigation of the defendants, diverted the whole of plaintiff's water from the ditch, and, further, that prior to obtaining such alleged void order of appointment the defendants between May 1, 1902, and May 24, 1902, took and diverted plaintiff's water to their own use, to his damage.

1. The court, over the objection of the plaintiff, struck out all evidence of alleged wrongful acts of the water commissioner and which were alleged to have been instigated by the defendants. The ruling of the court in so doing is assigned as error. The record fails to present any evidence showing or tending to show that the appointment of Somsen as water distributer was illegal and void, or that he was, in dividing and apportioning the water of the ditch, acting other than in his official capacity. His appointment, if void, must be predicated on the allegation, if it be true, that the defendants, who applied for his appointment, had no interest in the ditch or the waters flowing therein. The plaintiff introduced in evidence a written agreement made by and between him and John W. Stoner on May 20, 1897, wherein it is recited that the defendants, John W. Stoner, Aaron Stoner, Victor Forgeon (and others who are not made parties to this suit), were each the separate owners of distinct tracts of land lying under a proposed extension and enlargement of the ditch in controversy. That for a consideration John W. Stoner was given permission to extend

and enlarge said ditch, and when so extended and enlarged to use the same and take water therefrom to irrigate his land, and also that the others named might use said ditch and take water therefrom to irrigate their respective tracts of land, reserving to Mau the right to the use of the first five cubic feet of water per second of time which should flow in the ditch. This contract was competent· evidence to show Mau's title and the extent thereof. The question as to the amount of such excess, if any, to which each defendant is entitled is not here involved. Sections 908-916, Revised Statutes of 1899, as amended by Chapter 93, Session Laws of 1903, provides the method of procedure to have a distributer appointed to apportion and divide the water of a partnership ditch ·in case of disagreement between the partners, and also defines the duties of such water distributer when so appointed. He acts officially and solely by virtue of his appointment and has exclusive control of such ditch for the purposes of dividing and distributing the water received into the same until such time as he may be removed by order of the court, judge or commissioner. The proceeding for his appointment was a proceeding in the District Court, and the court's jurisdiction did not depend upon the consent of the parties, and this is true whether heard by the court, commissioner or by the judge in chambers. (Mau v. Stoner et al., 12 Wyo., 478.) The subject matter was within the jurisdiction of the court upon the filing of a verified petition setting forth the fact of joint ownership in the ditch, and that the owners could not agree relative to the distribution of the waters received into the same and praying the appointment of a water distributer as provided in the statute to. take charge of the ditch and distribute the waters thereof to the parties entitled to it. If in such proceedings the joint ownership was denied that was a question to be determined the same as any other, and such denial would not of itself oust the court of jurisdiction. Such a question goes only to the jurisdiction and its determination would not adjudicate the

titles and interests of the parties in and to the ditch. (State ex rel. Mau v. Ausherman et al., 11 Wyo., 410.) These statutes so construed make it clear that for the purpose of appointing Somsen as water distributer the ditch must have been found and determined to be a partnership ditch. Although Somsen was appointed by the District Court commissioner, it does not appear that any appeal has been taken from the action of the commissioner in so appointing him, though such appeal is allowed by Section 910, Revised Statutes, as amended by Chapter 93, Session Laws 1903, and the order might have been suspended during the pendency of such appeal by giving an undertaking in an amount fixed by the commissioner. (Mau v. Stoner et al., 83 Pac., 218.) Nor does it appear that any application for Somsen's removal has ever been made. He may for all that the record shows still be in exclusive control of the ditch, and the remedy here sought would not disturb him in his authority over it. Nor does the evidence show or tend to show as alleged by the plaintiff that the defendants instigated or procured him to commit any of the acts complained of. The burden was upon the plaintiff to prove this allegation, and the only evidence relied upon to sustain it is that he was appointed pursuant to the joint application of the defendants and that plaintiff was not receiving as much water as he was entitled to and that the defendants were at the same time receiving more than they or either of them was entitled to. As already stated, for the purposes of appointing a water commissioner the partnership character of the ditch was determined in the proceeding leading up to his appointment. The defendants were then acting clearly within their rights under the law. It is not pointed out nor has our attention been called to a single authority or rule of law that imparts a wrong motive to the exercise of a statutory right or gives a cause of action therefor. The water distributer may have acted wrongfully and the plaintiff may have been damaged thereby, but the gravamen of the charge is that such wrongful act was at the instigation of the de-

fendants. Knowledge of such wrongful acts is imputed to the defendants by the allegation and must be sustained by proof. The mere fact that they were receiving water under a claim of right from a partnership ditch in which they claimed an interest pursuant to the direction of one who had been regularly appointed water distributer by the court, and who had exclusive control of the ditch "for the purpose of dividing and distributing the water received into the same," does not impart knowledge to one so receiving the water that the water distributer is acting unfairly to others who are entitled to water from the same ditch. We are of the opinion that as the plaintiff failed to produce any evidence tending to show that the alleged wrongful acts of the water distributer were instigated or procured by the defendants, or either of them, the court properly struck out all evidence in relation thereto.

2. At the close of the plaintiff's evidence the defendants moved the court for permission to amend their answer. The motion was granted over the plaintiff's objection, and the defendants filed the following amendment, viz.: "That there is a misjoinder of parties defendant in this, to-wit: That each of the defendants was improperly joined with the other herein upon an alleged cause of action sounding in tort, in which alleged tort neither of the defendants was a joint tort feasor or wrong doer with the other, but each acted, if at all, independently of the other without concert of action or unity of design between either of them, and that the acts of each of them was the separate and not the joint acts of each of them." The motion was supported by affidavits as to diligence in making the same upon discovery that the plaintiff sought to recover upon a several and not a joint liability. Such discovery rested in plaintiff's failure to prove a joint liability as alleged in his petition. It is urged by plaintiff in error that joint liability is not alleged, but, very clearly, he is in error in this contention, for the petition does charge that the defendants committed the acts alleged to have caused the injury which in effect makes the

act a joint one. (Minter v. Gose et al., 13 Wyo., 178.) When he rested his case no joint liability had been proven and the defendants by their answer had met that issue. The facts shown by the evidence were not stated in the petition, nor did they support the issue tendered. The answer as originally filed was sufficiently broad and met the issue of joint liability. No notice was given, by the broadest interpretation of the language of the petition, that plaintiff in error intended to rely upon proof of a several liability for a recovery. Had several liability been plead, it would have been the duty to have raised the question by demurrer for misjoinder of separate causes of action and also misjoinder of parties defendant, but as these defects were not apparent upon the face of the petition it could not be so reached. It was first made apparent at the close of plaintiff's evidence, the defendants having no intimation prior to that time as shown by the affidavits in support of their motion to amend their answer, that plaintiff relied upon proof of a several and separate liability, if indeed his evidence was sufficient for that purpose, for a recovery against one or a part of the defendants instead of against all. The defect not being apparent on the face of the petition would be waived unless taken advantage of by answer. (Sec. 3537, R. S. 1899.) As to when an amended answer can be filed is a matter regulated by the code. "The party applying to amend during the trial shall be required to show that the amendatory facts were unknown to him prior to the application, unless in its discretion the court shall relieve him from so doing." (Sec. 3588, R. S. 1899.) From the affidavits in support of the motion to amend, which affidavits are in no wise controverted, it does appear that the amendatory facts were unknown to the defendants prior to the time plaintiff rested his case when the motion was made. The affidavits were before the trial court and the amendatory facts constituted a defense to the case if any as made by the evidence, and the allowance of the amendment was clearly within the provisions of the statute.

3. At the defendants' request, the court at the close of plaintiff's evidence and over the objection of the plaintiff, after the answer was amended as aforesaid, instructed the jury to return a verdict for the defendants upon the ground "that the defendants were improperly joined herein because the undisputed evidence shows the acts complained of were not the joint acts of any one defendant with the other, but were the several, separate, independent acts of each, without unity of design or concert of action." All evidence as to wrongs of the water distributer having been stricken out, the determination of the correctness and the right to give this instruction calls for a consideration of the evidence then remaining in the case. Such evidence referred to and it is claimed established *prima facie* the alleged wrongs committed between the fourth and the twenty-third day of May immediately prior to the time when the water distributer assumed control of the ditch. It is alleged that between these dates "the defendants without any right whatever and without plaintiff's consent, wrongfully, wantonly and maliciously diverted all of plaintiff's water from the said canal and appropriated it to their own use and deprived plaintiff of the use thereof." Mau testifies that early in May, after he had commenced to irrigate, that one of John W. Stoner's employees had turned the water off from the ditch; that Stoner sent for him and on the evening of the same day Mau sought and had a conversation with Stoner in which the latter said he wanted to do some work on the ditch and had had the water turned off at the headgate for that purpose. Mau protested that it was not the proper time and told Stoner that he might have done the work earlier in the season when it was not necessary to use the ditch for irrigating purposes; that he needed the water at the time and said: "and when I get to turn the water on you always turn it off." To the latter remark Stoner replied that "he would take the water whenever he felt like it and would turn it off when he felt like it." Mau says that at this time he was for a day and a half deprived

of the use of water for domestic and irrigating purposes and that such interferences occurred more or less until May 24th following, and that he needed water for irrigating purposes during all that time. That the carrying capacity approximately of the canal at that season was five cubic feet of water per second of time. That he measured the flow of water in the ditch at different times during this period and that sometimes he didn't find any, at other times four feet and at times a little more than five cubic feet, and that the flow was about five cubic feet whenever the water wasn't turned off. His measurements were made every other day, and on these days he observed about a cubic foot of water running in a lateral belonging to defendant John W. Stoner, and that he made the measurements in the canal down toward his own place below this lateral. Upon direct examination he does not mention or charge any of the defendants other than John W. Stoner in connection with the wrongs charged. Upon cross-examination the following questions were asked and answers made:

Q. And he (John W. Stoner) usually in the irrigating season irrigates with water below these laterals?

A. Why, Stoner takes the water whenever he feels like it, I suppose.

Q. Who else?

A. Aaron has irrigated some of the time.

Q. Who else?

A. Victor Forgeon.

Q. Who else?

A. No one that I know of, excepting myself.

The plaintiff is corroborated in this evidence by other witnesses, except as to the statement that John W. Stoner took water from the ditch whenever he wanted to. One witness testified that he heard Victor Forgeon say, but not in the presence of any of the other defendants, that they would show the plaintiff that the ditch didn't belong to him, although the first five feet of water did. We have searched the record carefully to find if there was any evidence to

show or tending to show that the acts complained of were participated in jointly by all of the defendants. The water for this ditch is taken from Smith's Fork and the lands of the different parties to the action going from the headgate down the ditch are as follows: First the land of John W. Stoner, then that of Aaron Stoner, then comes that of Victor Forgeon, and the next is the land of plaintiff. Each owns his own tract and irrigates the same separately and independently with his own separate lateral or laterals from the ditch which is referred to and known as the Mau canal. The evidence shows no two of the defendants acting together in the acts complained of except in cleaning out the ditch, for which purpose John W. Stoner had the headgate closed down, thereby turning the water from the ditch and permitting it to run down Smith's Fork, from which the supply was drawn. The plaintiff, to prove his allegation of sole ownership to the ditch, introduced the contract already referred to and relies upon that and other evidence as to the capacity of the ditch to sustain him in this contention. The contract was before this court in Mau v. Stoner, 10 Wyo., 125. It was introduced in evidence in that case by the defendant on cross-examination of the plaintiff and before the plaintiff had rested his case. It therefore became and was the defendant's evidence upon the issues there tried. This court said "that they are joint owners of the ditch is denied by the parties bringing this suit and the court could not find that it was a joint ownership until the defendant had affirmatively shown that he had performed his part of the contract in enlarging the ditch." The contract is set out in *haec verba* in Stoner v. Mau, 11 Wyo., 366, and is as follows:

"This agreement made and entered into between Frank A. Mau of the County of Uinta and State of Wyoming, party of the first part, and John W. Stoner of the same place, party of the second part, witnesseth:

"That, whereas, the party of the first part is the owner of three hundred and twenty acres of land situate about

two miles south of Cokeville, in said county, and Gustave Mau is the owner of one hundred and sixty acres of land adjoining the same;

"And, whereas, the party of the first part has constructed a water ditch from Spring Creek to said land and is now the owner of the same;

"And, whereas, the party of the second part is desirous to enlarge said ditch and extend the same;

"And, whereas, the following named parties own the following named number of acres of land upon the line of said ditch and the extension thereof, to-wit: John W. Stoner, 860 acres; Charles Deloney, 640 acres; Cyrus E. Wheeland, 360 acres, and Victor Forgeon, 40 acres; Aaron W. Stoner, 160 acres.

"Now, this indenture witnesseth: That, in consideration of one hundred dollars, the party of the first part agrees that the party of the second part shall have the right to enlarge said ditch to a sufficient capacity to carry water sufficient to irrigate all of the above land and have the right to extend the same from its present terminus.

"And it is further agreed between the parties hereto that the party of the second part shall have the right at any time before the 12th day of June, 1897, to shut off the water from said ditch for the space of ten days.

"That after the said 12th day of June, 1897, the party of the second part shall furnish the ditch at least three cubic feet of water to the party of the first part.

"The said party of the second part agrees to enlarge and extend said ditch, at his own expense (except that the first party agrees to furnish his services, with team, for fourteen days).

"The party of the second part agrees to maintain and keep said ditch in repair for the term of one year after the completion of the enlargement thereof, and after the expiration of one year from the completion of the enlargement of said ditch each of the parties hereto agrees to bear his portion of all necessary expenses in maintaining said

· ditch and keeping the same in repair in proportion to the amount of water used by them or their assigns.

"The party of the first part shall have the right at all times after the completion of the enlargement of said ditch to draw from said ditch through two openings or sluice gates, to be constructed by the party of the first part, five cubic feet of water.

"And it is agreed that, after the completion of the enlargement of said ditch, all of 'the ditch now owned by the party of the first part lying north of the juncture of said ditch with Stoner ditch and south of Spring Creek shall become the property of the party of the second part.

"And it is agreed that said ditch, when so enlarged, shall be the property of the parties hereto in proportion to the amount of water used by them or their assigns to its present terminus.

"It is further agreed that all water flowing in said ditch in excess of said five cubic feet shall be the property of the party of the second part."

The defendants set up this contract in their answer and alleged a compliance with its terms by John W. Stoner and claimed the right to use the water over and above the amount reserved to Mau. The plaintiff by his reply alleged that "the said John W. Stoner failed and neglected to enlarge said ditch and therefore never acquired any rights therein." No evidence was offered in support of this allegation by the plaintiff. The contract was introduced in evidence by him, was a part of his proof and was before the court in its entirety, and, conceding that by its terms the right to clean out and repair the ditch whenever it became necessary depended upon the performance of this condition precedent, the plaintiff having developed that fact in his own evidence, in order to prove the acts of repairing the ditch to have been tortious, should have followed it with evidence showing or tending to show that the condition precedent had never been performed. Having failed to do this, and there being no evidence showing or tending to show

that the repairing or cleaning out the ditch was unnecessary or unreasonable at the time, it must be assumed that the defendant Stoner had a right to clean the ditch and keep it in repair and to shut off the water at the headgate if necessary in so doing, even though it deprived the plaintiff of the use of the water while he was so engaged. The plaintiff had no right to have the case go to the jury upon this evidence, for there was a complete failure of the proof that the act complained of was wrongful or tortious.

Aside from the alleged wrong in shutting off the water for repairs, it is urged that the defendants were jointly liable for separate and independent interferences with Mau's right by reason of their common answer in which they plead this contract, and that the case falls within the rule announced in Hulsman v. Todd, 96 Cal., 228. In that case the defendants filed a common answer in which they admitted their adverse claim to the water in dispute and set up a claim of prior right in the defendant Todd, and also that the defendants claimed no interest or right to use the water except within the limits of and subject to his superior right thereto. The trial court found from the evidence that the defendants did claim adversely to the plaintiff and that Todd for the benefit of himself and his co-defendants "diverted a portion of the water belonging to the plaintiff." It was held as to Hosellkus, one of the defendants, he having so joined in a common answer, that the diversion was for his benefit, "and presumably made partly at his instance and procurement," and that a joint judgment against the defendants was proper upon the issues and the evidence. In that case the defendants did not deny taking the water, but attempted to justify under and in pursuance of a prior right thereto, and of course having failed to establish such prior right as against the plaintiff they were jointly liable. In Livesay et al. v. First Nat. Bank of Denver et al., 86 Pac., 102, which was an action in tort, the Supreme Court of Colorado says: "We do not think that the mere fact of joining in a joint answer by defendants who are charged

with joint liability has any weight as evidence to prove such joint liability in the absence of proof of other acts or facts which would prove such joint liability." In the case before us there is no claim in the answer of the right to use the water other than as established by plaintiff's evidence. The defendants claim no right to the use of the first five cubic feet of water running in the ditch per second of time. Mau's right thereto is conceded, and his evidence shows that and no more to be the amount to which he is entitled. The right to use the water subject to Mau's right by the defendants other than Stoner was permissive as well by the plaintiff as by Stoner. By the contract, the one does not undertake to be responsible for the acts of the other, nor do they claim jointly, through it or otherwise, the right to use any of the water to which Mau is entitled. The evidence shows or tends to show that the defendants acted separate and apart at different times and places, and not in pursuance of any design or purpose by all of them to deprive plaintiff of his rights. Such being the case, each would be liable for his own trespass or wrong and neither would be liable for the trespass or wrong committed by the other, even though the damage sought was the result of such independent wrongs. (Blaisdell v. Stephens, 14 Nev., 17; Miller v. Highland Ditch Co., 87 Cal., 430; Pomeroy Remedies and Remedial Rights (2d Ed.), p. 465; Chipman v. Palmer, 77 N. Y., 51; Livesay et al. v. First Nat. Bank of Denver et al., *supra*.) There was more than a variance between the proof and the allegations of the petition—it was a failure to prove the cause of action alleged. The case does not therefore come within the rule that when there is some evidence tending to prove plaintiff's case the question should go to the jury. Proof only of several separate and independent wrongs was fatal to the cause of action under the pleadings, and the court properly gave the instruction complained of. (Livesay et al. v. First Nat. Bank et al., and other cases, *supra*.)

Our attention has been called to different provisions of the code and it is urged that they required the submission of the case to the jury. It may be conceded that under these provisions a recovery may be had against one or more joint tort feasors sued jointly, or, in other words, that such right is regulated by the proof and not by the allegations of the petition. (Thompson v. Reinhard et al, 11 Wis., 306; Mead v. McGraw, 19 O. St., 55; Rengler v. Lilley et al., 26 O. St., 48; Blodget v. Morris, 14 N. Y., 482; Lower v. Frank, 115 Ind., 334.) Each of these cases was one wherein the action was predicated upon a single tort or wrong. It should be remembered that every tort is complete in itself and all who participate in its commission are jointly and severally liable for the damage resulting therefrom. These cases deal with that question which is entirely different from the one before us, for here the defendants were not joint tort feasors under the evidence.

The judgment will be affirmed.                *Affirmed.*

POTTER, C. J., and PARMELEE, District Judge, concur.

PARMELEE, District Judge, sat in place of BEARD, Justice, who had announced his disqualification to sit in the hearing and determination of this cause.

### ON PETITION FOR REHEARING.

PER CURIAM.

Plaintiff in error has filed a petition for rehearing in this cause urging practically the same points presented at the former hearing. The opinion in the case (87 Pac., 434) very fully considered the various propositions involved in the case, and a further discussion thereof is not deemed necessary. No reason is perceived for departing from the views previously expressed, and therefore a rehearing is denied.                *Rehearing denied.*

BEARD, J., did not sit.