## TAYLOR v. STOCKWELL ET AL.
## (No. 774.)

ACTIONS—PARTIES—MISJOINDER—QUESTION FOR JURY—INSTRUCTIONS —EVIDENCE.

1. A joint recovery, when properly challenged, cannot be sustained by proof of separate, several, and independent causes of action in favor of separate plaintiffs.

2. Where, in the manner prescribed by statute, a defendant raised the question of misjoinder of the plaintiffs, he was entitled to an instruction to the effect that if it be found that the money or property sued for did not belong to the plaintiffs jointly, but that each had separate and independent claims against the defendant for divisible parts only of the money or property, the plaintiffs could not recover in the action.

3. Where, in an action by two plaintiffs for money found by them in the cellar of the building of the defendant and paid over to defendant, who claimed ownership of the money, under alleged threats of criminal prosecution, the

evidence disclosed that after the money was found a part thereof was deposited in a bank to the credit of one of the plaintiffs, a larger part to the credit of the other plaintiff, and a part was given to the latter's wife, and that the money was afterwards paid over to defendant partly by the individual checks of the plaintiffs, the check of one of them covering not only the amount of the found money deposited to his credit, but other money previously on deposit, that neither plaintiff was present when the other delivered his check to the defendant or when the alleged threats were made to the other plaintiff, that there was no joint ownership in part of the money paid to defendant, but there was evidence from which it might, perhaps, be found that there had not been a final division or settlement between the plaintiffs as to the money deposited in the name of one of them, the question of misjoinder of parties plaintiff and causes of action, upon the issue thereof presented by the answer, was for the jury under proper instruction.

4. In such action, the error of the trial court in refusing to give instructions requested by defendant submitting to the jury upon the evidence the question of the joint ownership or interest of the plaintiffs in the money or property sued for was not cured by an instruction that to entitle the plaintiffs to recover it must be found that no final settlement and division of the money found by the plaintiffs had been had or made by and between them, since said instruction tended to mislead the jury, in that it attempted to fix the liability of defendant to plaintiffs jointly for the value of all the money, notwithstanding that the evidence showed a final division of at least a part of it.

5. It was error, in such action, to permit one of the plaintiffs and another witness testifying in their behalf to testify over objection of the defendant, on the ground that the evidence was hearsay, to statements made not in the presence of the defendant.

[Decided January 18, 1915.]          (145 Pac. 743.)
[Rehearing denied April 6, 1915.]    (147 Pac. 328.)

Error to the District Court, Laramie County; Hon. William C. Mentzer, Judge.

The action was brought by Reuben Stockwell and Jess W. White against William Taylor. Judgment was rendered

for the plaintiffs and the defendant brought error. The
material facts are stated in the opinion.

*Charles L. Rigdon, Herbert V. Lacey* and *John W. Lacey,*
for plaintiff in error.

The action is one to recover certain funds and the value
of certain property transferred to the plaintiff in error, de-
fendant below, under threats of criminal prosecution. The
amended petition shows that a part of the money was trans-
ferred to defendant by Stockwell, a part by White, a part
by the latter's wife, and that certain personal property was
transferred to the defendant by White, including an order
for a balance due to him. Such petition also states the
facts leading up to such transfer under threats, as alleged,
of the money and property by the different persons afore-
said. There was a misjoinder of parties plaintiff. The
question was first raised by demurrer, and afterward by
answer, and on the trial by requested instructions based
upon the evidence. The demurrer should have been sus-
tained, for the amended petition alleges separate causes of
action in favor of the plaintiffs severally, if any cause of
action is set forth at all. White could not participate as
plaintiff in a suit brought by Stockwell for the value of the
saddle which the latter transferred to the defendant,
whether or not the threat was procured by threats or false
representations, nor could Stockwell recover for the trans-
fer of personal property to the defendant by White, for
that property belonged to White, and Stockwell had no in-
terest in it. The same is true as to the recovery of money
due from the defendant to White which White released by
his order to the defendant, as alleged in the petition. It
appears upon the face of the petition, and particularly from
the evidence, that the defendant dealt with the plaintiffs in-
dividually; that the amount which each paid and delivered
to the defendant was paid and delivered by each plaintiff
individually; that the representations and threats were to
each individually; that the cause of action for the money
covered by the check of Stockwell was based upon a tort,

viz: inducing the transfer of that money to the defendant by threats and false representations made to Stockwell individually. And, likewise, if there was any cause of action for the check given to the defendant by White it would result from a tort committed upon White personally. (Schaeffer v. Marienthal, 17 O. St. 184; Utterback v. Meeker, 16 Wash. 185, 47 Pac. 428; Hynes v. Farmers' L. & T. Co., 9 N. Y. Supp. 260; Shull v. Barton, 56 Neb. 716, 77 N. W. 132; Brownell v. Irwin, 25 Ind. App. 395, 58 N. E. 263; Lewis v. Eshleman, 57 Ia. 633, 11 N. W. 617; Bank v. Walker, 7 Kan. App. 748, 53 Pac. 379; Coryton v. Lithebye, 2 Saund. 112, 117; Hinkle v. Davenport, 38 Ia. 355). Upon the uncontradicted facts the plaintiffs were not entitled to recover anything. In addition to the presumptions as to the defendant's ownership of the gold found in his cellar by the plaintiffs, there is direct testimony of both the defendant and his wife that the gold was his property and was placed in the cellar by him. Moreover, he produced a book kept by him showing the amount which he deposited there from time to time. There is no other explanation of the manner in which the gold came into the cellar, nor how any other person could have conceived the idea or executed it of hiding the gold in the cellar. While the plaintiffs produced evidence for the purpose of impeaching the testimony of the defendant and his wife by an attempt to show contradictory statements, such statements, if made, are not sufficient for the purpose of impeachment, and clearly do not prove that the gold was not owned by the defendant in whose possession it was found.

It was error to admit statements made by the plaintiffs and other persons out of the presence of the defendant. It was also error to exclude evidence offered by the defendant to impeach the witness Wood, who had testified at the former trial as to statements made by defendant, by showing his reputation for truth and veracity in the several different places where he had previously resided from time to time, it appearing that he frequently moved from place to place

without, apparently, any permanent place of residence. (2 Wigmore on Ev. Sec. 928; People v. Abbott, 19 Wend. 192; Brown v. Perez, 89 Tex. 282, 34 S. W. 725; Alford v :State, 47 Fla. 1, 36 So. 436; Prater v. State, 107 Ala. 26, 18 So. 238; Sleeper v. Van Middlesworth, 4 Denio, 431; Rathbun v. Ross, 46 Barb. 127; Stevens v. Rodger, 25 Hun, 54; Craft v. Barron, 121 Ky. 129, 88 S. W. 1099; Watkins v. State, 82 Ga. 231, 8 S. E. 875; Mynatt v. Hudson, 66 Tex. 66, 17 S. W. 396). And evidence was also competent and admissible to show the reputation of the witness after testifying at the former trial, that being the evidence under consideration, which was offered because of his absence. (2 Wigmore on Ev., Sec. 929; Dollner v. Lintz, 84 N. Y. 669; 1 Greenleaf's Ev. (16th Ed.), Sec. 461d; 21 Kan. 18).

*B. F. Griffith* and *Wilfrid O'Leary,* for defendants in error.

The gist or gravamen of the action was the ownership of the gold coin, and the question of law was who, as between the plaintiffs and the defendant, were entitled to its custody, that is; whether the owner of the soil or the finders. This question was settled by the court in favor of the plaintiffs as the finders of the coin, and that decision seems to be satisfactory to plaintiff in error, for the matter is not mentioned in his brief. The plaintiffs were proper parties to bring the suit and were properly joined. The coin belonged to them jointly, and until a final division they had a joint interest and could pursue only a common remedy to protect their interests. (Tapscott v. Williams, 10 Ohio, 442; Choteau v. Raitt, 20 Ohio, 132). The checks were upon joint undivided property, although upon deposits to individual credit, and such checks as well as the chattels given to the defendant were given to replace joint expenditures from a joint fund. There being a joint interest the plaintiffs were properly joined. (1 Story's Eq. Pl. Sec. 76 c; 15 Ency. Pl. & Pr. 584; 30 Cyc. 118; Loomis v. Brown, 16 Barb. 325;

Forester v. Lawson, 3 Bing. 455; Barrett v. Collins, 10 Moore, 446; Painter v. Land Co., (Mich.) 127 N. W. 739; Bank v. Hummel, 14 Colo. 259, 23 Pac. 986, 20 Am. St. 257, 8 L. R. A. 788; Comp. Stat. 1910, Sec. 4332; Robinson v. Smith, 3 Paige, 222; Alston v. Jones, 3 Barb. 397; McCotter v. Lawrence, 4 Hun, 107; Chaplin v. Chaplin, 4 Edw. Ch. 228; Barbour on Part., 477; Dursley v. Fitzhardinge, 6 Ves. Jr., 251; Geekie v. Kirby C. Co., 106 U. S. 379; Porter v. Baldwin, 123 N. Y. Supp. 1043; Carlton v. Foley (Minn.) 126 N. W. 727; Cox v. Steed, (Tex.) 131 S. W. 246; 30 Cyc. 118). These cases and others assert the principle that all persons interested in a single cause of action may join therein, though their interests be distinct and several, and without regard to the extent of their respective interests; it being sufficient if all the plaintiffs have some common interest in respect to the same subject matter of the suit, and each is interested in the same relief asked by the other or some part of it. The defendant was certainly not prejudiced or injured by the plaintiffs joining in the action, and a judgment will not be reversed where it appears that substantial justice has been done. (Ivinson v. Althrop, 1 Wyo. 71; Waldschmidt v. Terr., 1 Wyo. 149; David v. Whitehead, 13 Wyo. 189; Myers v. Farrington, 18 Ohio, 72; Webster v. Ry. Co., (Mo.) 22 S. W. 474; Cinfel v. Malena (Neb.) 93 N. W. 165; 30 Cyc. 83; Inman v. Lumber Co., (Cal.) 112 Pac. 560; 2 Cyc. 632). The rule as to joinder of parties is a rule of convenience—a rule of discretion rather than of absolute right. (30 Cyc. 117; Birdsong v. Birdsong, 2 Head, (Tex.) 289; Wiser v. Blackly, 1 Johns. Ch. 438; Elmendorf v. Taylor, 10 Wheat. 167; West v. Randall, 2 Mason, 181). The cases cited by plaintiff in error on this question of misjoinder are not in point upon the facts with the case at bar. The action is for recovery of damages, and the damages sustained are, without dispute, the amount or value of the property jointly found by the plaintiffs, defendants in error here. The instructions offered by defendant on the question of misjoinder were properly refused, for the evidence shows that there had not

been a division or settlement between the plaintiffs of the
money found by them. The jury heard the testimony of the
witnesses and must be presumed to have properly deter-
mined as to their credibility, and the evidence justifies the
verdict. A verdict based on conflicting evidence will not
be disturbed. (Martin v. Dowd, 8 Ida. 453, 69 Pac. 276;
O'Brien v. Foglesong, 3 Wyo. 57; Edwards v. Murray, 5
Wyo. 153; Kimball Co. v. Payne, 9 Wyo. 441; Harden v.
Card, 15 Wyo. 217; R. R. Co. v. Morris, 16 Wyo. 308;
Slothower v. Hunter, 15 Wyo. 189). Some of the objec-
tions to the admission of evidence now complained of were
not incorporated in the assignment of errors, but if the mat-
ter was before the court we think it sufficient to say that the
conversations testified to were not between the witness and
third parties, and that where the objection follows the
answer a motion to strike is the only proper objection that
can be considered. (Abbott's Tr. Brief, 151, 244; Malm v.
Thein, 66 N. W. 650; Lellman v. Mills, 15 Wyo. 149).
Again, a judgment will not be reversed for the admission
of immaterial evidence where it has not affected substantial
rights. (Alsop v. Hutton, 1 Wyo. 284; Kuhn v. McKay,
7 Wyo. 242). The testimony of the witness Wood, taken
upon the former trial of the case, was properly admitted.
(16 Cyc. 1108, 1109). And in excluding some of the evi-
dence to impeach that witness no error was committed.
(Dollner v. Lintz, 84 N. Y. 669; 1 Greenleaf's Ev., 585).
But if the exclusion 'was error the several offers of proof
were made in the presence and hearing of the jury and
the error was harmless. (Link v. U. P. R. Co., 3 Wyo.
680; Ry. Co. v. Pollock, 16 Wyo. 321; Gregory v. Morris,
1 Wyo. 213; Jenkins v. Cheyenne, 1 Wyo. 287; Fein v.
Davis, 2 Wyo. 118; Davis v. Lumber Co., 14 Wyo. 517).
Evidence of the reputation of a witness for truth and verac-
ity in a community several years after he has ceased to re-
side there is irrelevant; such evidence must relate to the
reputation at the place of his residence when he testifies.
(Faulkner v. Gilbert, (Neb.) 85 N. W. 843; 16 Cyc. 1276,
1278; Robbins v. Ginnochio, (Tex.) 45 S. W. 34). The

action of the court in passing on the question whether the time to which evidence as to reputation relates is too remote will not be reviewed in the absence of great abuse of discretion. (Kelley v. State, 61 Ala. 19; Lawson v. State, 32 Ark. 220; Snow v. Grace, 29 Ark. 131; Brown v. Luehrs, 1 Ill. App. 74; Page v. Wright. 116 Ind. 502, 19 N. E. 459; R. R. Co. v. Richardson, 66 Ind. 43, 32 Am. Rep. 94; Coates v. Sulau, 46 Kan. 341; State v. Lanier, 79 N. C. 622). Many courts decline to receive evidence of reputation at a time since the trial or accusation. (1 Greenleaf's Ev., (16th Ed.) 586; Ins. Co. v. May, 20 O. St. 212; Wroe v. State, 20 O. St. 460; Spurr v. U. S., 87 Fed. 701; Waddington v. Hulett, 92 Mo. 533). The defendant below having failed to prove ownership in himself or in the state cannot complain of the recovery by plaintiffs. (Klug v. McPhee, (Colo.) 63 Pac. 709).

The plaintiffs are both interested in the subject of the action, and therefore properly joined as plaintiffs. (Bliss on Code Pl., Secs. 76, 126; 1 Suth. Code Pl. & Pr., Sec. 634; Wyo. Comp. Stat., Sec. 4391; Collier v. Ervin, 3 Mont. 145; Davis v. Davis, (Mont.) 23 Pac. 717; Cotter v. Lohse, (Mont.) 77 Pac. 419; Burrage v. Bonanza M. Co., (Ore.) 6 Pac. 769; Bank v. Parker, (Wash.) 68 Pac. 756 McCormick v. Hill, (Mo.) 79 N. W. 745; O'Brien v. Garniss, 25 Hun, 448). The subject of the action is title to the money found by the plaintiffs. If title vested in the plaintiffs by the finding then they had that title jointly. The equivalent was what Taylor wrongfully converted. (People v. Morrill, 26 Cal. 360; California &c. Ass'n. v. Abbott, (Cal.) 117 Pac. 767; Daly v. Ruddell, (Cal.) 70 Pac. 784; Fairbanks v. Ry. Co., (Cal.) 47 Pac. 450; Ins. Co. v. Ward, 24 O. C. C. 156; Unfried v. Libert, (Ida.) 119 Pac. 885; Mullerleile v. Brand, (Wash.) 116 Pac. 868; R. R. Co. v. Huitt, (Kan.) 41 Pac. 1051; Burkett v. Groc. Co., (Okl.) 56 Pac. 856; Powell v. Willamette V. R. Co., (Ore.) 11 Pac. 222; Scofield v. Lansing, 17 Mich. 445; Oliver v. Perkins, 92 Mich. 304; Hawke v. Banning, 3 Minn. 67; Green v. Smith, 155 App. Div. (N. Y.) 424; Osborn v.

R. R. Co., 140 Mass. 549; Porter v. Baldwin, 123 N. Y. Supp. 1043; Davenport v. Price, 41 Fed. 323; Kelly v. Boetcher, 85 Fed. 55; 1 Suth. Code Pl. & Pr. Sec. 17). Misjoinder of plaintiffs is not a ground for new trial where no prejudice is shown to have resulted therefrom. (Porter v. Ins. Co., 72 Conn. 519; Asevedo v. Orr, (Cal.) 34 Pac. 777; Hirshfield v. Weill, (Cal.) 53 Pac, 402; Shade v. Lumber Co., (Cal.) 47 Pac. 135; Barney v. Latham, 103 U. S. 215).

On petition for rehearing counsel cited the following additional authorities on the question of misjoinder: Appeal of Cumberland Valley R. Co., 62 Pa. St. 218; Scheiffer v. Eau Claire City, 51 Wis. 385; Trompen v. Yates, (Neb.) 92 N. W. 649; R. R. Co. v. Haber, (Kan.) 44 Pac. 632; Oliver v. Pratt, 3 How. 333; Webster v. R. R. Co., (Mo.) 22 S. W. 474; Wiliams v. Crabb, 117 Fed. 203. And the following authorities in support of the proposition that if there was a misjoinder the defect was without injury and harmless and should not be ground for reversal: Gilland v. U. P. R. Co., 6 Wyo. 185; Rogers v. P. M. Co., 154 Fed. 614; S. N. B. Co. v. Sprague, 8 Fed. 377; Kelley v. Boettcher, 85 Fed. 55; Wash. Co. v. Williams, 111 Fed. 815; Watson v. Bonfils, 116 Fed. 159; I. C. R. Co. v. Caffrey, 128 Fed. 775; W. A. B. Co. v. R. R. Co., 137 Fed. 31; F. & D. Co. v. F. T. Co., 143 Fed. 156; Bracken v. Rosenthal, 151 Fed. 137; Reynolds v. Lincoln, 71 Cal. 183; Angell v. Hopkins, 79 Cal. 181; Merrill v. Lake, 16 Ohio, 373, 47 Am. Dec. 377; Boburg v. Prahl, 3 Wyo. 325, 23 Pac. 70.

SCOTT, JUSTICE.

The plaintiff in error, who was defendant below, brings error to reverse a judgment obtained by defendants in error, as plaintiffs against him in the court below, for the sum of four thousand, eight hundred fifty-seven and 6/100 ($4,857.06) dollars, together with their costs, amounting to the sum of seventy-seven and 20/100 dollars. The case was tried to a jury on an amended petition, answer thereto and reply. The jury found and returned a verdict in favor of

plaintiffs jointly and the judgment was rendered on the verdict as found by the jury, less one hundred, forty-five and 93/100 ($145.93) dollars, which was remitted by the plaintiffs.

It is alleged in the amended petition that on July 13, 1909, the plaintiffs "while lawfully engaged in doing repair work in the cellar of and for the defendant at the town of Rock Creek, State of Wyoming, did find and discover buried in the ground in an old receptacle a large amount of coin, to-wit: an amount in value and sum of $4,177.50; that said receptacle was one glass jar; that the physical condition of said receptacle showed conclusively that it had been buried for many years and that its contents had been undisturbed for many years; that the plaintiffs were the finders and discoverers of said buried treasure and are now and ever since" their said discovery "have been at all times the lawful owners thereof and lawfully entitled thereto by reason of said finding and discovery; that the owner, loser and depositor of said gold coin is and has been at, both prior and subsequent to said finding and discovery unknown and that said treasure did not on July 13, 1909, or at any other time belong to the defendant nor any part or parcel thereof." That plaintiffs took possession of the gold coin at the time of its discovery and removed the same from the cellar and thereafter and on July 19, 1909, a portion of said coin was deposited as follows: $2,235 thereof was deposited in the First National Bank of Laramie, Wyoming, to the credit of J. W. White, one of the plaintiffs, and $1,300 thereof was deposited in the same bank by J. W. White to the credit of Reuben Stockwell, one of the plaintiffs, and $32.50 thereof was given into the custody and possession of Alma White, wife of the plaintiff, J. W. White. It is further alleged that "thereafter and on or about July 20, 1909, the defendant, having been informed of said discovery and finding, did falsely and fraudulently claim and represent to said plaintiffs and each of them and to the said Alma White, by plaintiffs jointly, that defendant was the true owner of said

gold coin and that the said gold coins discovered as afore-
said had been buried, hidden and secreted in said cellar,
the place of said finding and discovery, by the said defend-
ant, then and there well knowing said representations to be
false and untrue; that said defendant did then and there
charge the plaintiffs and the said Alma White falsely with
the crime of grand larceny and threaten to immediately
cause the arrest of each and all of them and to have them
and each of them sent to the state penitentiary on said false
criminal charge." It is further alleged that by means of
said threats and unlawful charges they were put in great
fear and duress and acting thereunder they "did on July 20,
1909, deliver over to said defendant property to the value
of $3,732.71, being described and of the value as follows,
to-wit: By J. W. White, cash in amount and value $2,235;
by Reuben Stockwell, cash in the amount and value of
$1,300; by Alma White, wife of plaintiff, J. W. White, cash
in the amount and value of $32.50; by J. W. White, one
saddle, value $46.50; one rifle, value of $16.00; one pair of
shapps, value $19.00; one bridle, value $14.65; one saddle
rope, value $1.05; by J. W. White one order on defendant
for the balance due defendant to White for labor amounting
to the sum and of the value of $68.01; * * * * * *
That said defendant has wrongfully and unlawfully re-
tained possession, use of and control of said above described
property, being of the total value of $3,732.71, and has at all
times failed, refused and neglected to deliver the said prop-
erty, or its value, or any part thereof, to the said plaintiffs
or either of them, although repeatedly requested so to do.
That by reason of the premises and the said wrongful and
unlawful conversion of said above described property by the
defendant, the plaintiffs have sustained damages in the sum
of $3,732.71, together with interest on said sum from July
20, 1909, at the rate of 8 per cent per annum. Wherefor,
plaintiffs demand judgment for damages against the defend-
ant for the wrongful conversion of said property above de-

scribed, in the sum of $3,732.71" with interest thereon at 8 per cent per annum from July 20, 1909, and costs.

The defendant demurred to the amended petition upon the following, among other grounds, viz:

"1.   There is a misjoinder of parties plaintiffs, in that the plaintiffs, Reuben Stockwell and Jess W. White, are improperly joined as parties plaintiff, as each of said plaintiffs has a separate action against the said defendant, and not a joint action against defendant.   2.  There is a defect of parties plaintiff, in that, if said plaintiffs can be joined, Alma White, is not joined with the other plaintiffs, and is a necessary and proper party to this action, if said plaintiffs are proper parties thereto.   3.  The claims of said plaintiffs and of each of them against the said defendant, are several claims and can not be sued upon jointly, but must be sued for and upon separately.   4.  The claim of said Alma White must be sued upon separately and not with the said plaintiffs.   5.  That separate causes of action and several causes of action are improperly joined, in one count and in one cause of action, to-wit: the claim and demand of J. W. White, one of said plaintiffs for $2,235.00 and interest thereon from July 20, A. D. 1909, the claim of Reuben Stockwell, one of said plaintiffs, for $1,300.00 and interest from said date last aforesaid, the claim of Alma White, who is not joined as one of said plaintiffs, for $32.50 and interest from the date last aforesaid, and the further claim of said J. W. White, one of said plaintiffs, for the further sum of $165.21, to-wit: the matters mentioned in paragraph 3rd of said amended petition, and interest thereon from the date last aforesaid, and which were not severally or collectively included in the original petition of said plaintiffs in this action filed;   *   *   *   *   *   9.  That the petition does not state facts sufficient to constitute a cause of action."

The court overruled this demurrer, to which an exception was reserved.   The defendant then filed his answer and cross-petition to the amended petition in which he alleged that he built, occupied and had exclusive possession and

control of the cellar ever since he built it in 1890; that he built it for and used it continuously thereafter in connection with his store building, in which he lived and conducted a general merchandising business; that the money found by plaintiffs was owned by him; that it arose from his business and was from time to time deposited in the jar, where it was found by plaintiffs, who kept their discovery secret and who removed it secretly from his premises and control; that they were in his employ when they found it, as set forth in the petition; and that they secretly appropriated it to their own use and he denied that he wrested it from their possession by threats, duress or fraud.

The third paragraph of the first and separate answer is as follows: "Said defendant admits that on or about the 13th day of July, 1909, said plaintiffs did take possession of and remove said gold coin, found by them, as aforesaid, from said cellar; and he admits that on or about July 19th, 1909, a portion of said gold coin was deposited in the First National Bank of Laramie, Wyoming, to the credit of J. W. White, by J. W. White, one of the plaintiffs herein, but defendant alleges that said sum so deposited was the sum of $2,200, and not $2,235.00 as stated in paragraph 3rd of said amended petition; and said defendant admits that $1,300, of said gold coin was deposited in the First National Bank of Laramie, Wyoming, to the credit of Reuben Stockwell, one of the plaintiffs herein; and defendant alleges that at the time of said deposit of $2,200, said plaintiff White had in said bank the sum of $35.00 to his credit which was not any of the proceeds of said gold coin of defendant; and said defendant further alleges and admits that $32.50 thereof was given into the custody and possession of said Alma White, whose true name, defendant alleges, is Elma White; but defendant alleges that the same was given to her absolutely by plaintiffs or one of them; and defendant further alleges that said gold coin was unlawfully, secretly, fraudulently and feloniously divided and apportioned between and among said persons by plaintiffs, and by said plaintiff

White; and that said plaintiffs ought not further to prosecute this action because said claim of said White against this defendant unlawfully and wrongfully made in said petition, as amended, is his separate claim against defendant for $2,235.00 with interest thereon from said 20th day of July, A. D. 1909, and not the joint claim of said plaintiffs, White and Stockwell; and that said pretended claim of said Stockwell of $1,300, and interest thereon from said date last aforesaid, is the separate claim of said Stockwell against said defendant, and not the joint claim of said plaintiffs; and that the said pretended claim of said Alma White against this defendant for $32.50, and interest thereon from said date last aforesaid, is not the joint claim of said plaintiffs, but is the separate claim of said Alma White; and that said pretended claim of said plaintiff White for one saddle, one rifle, one pair shapps, one bridle, one saddle rope and for the balance claimed and pretended to be due to said plaintiff White for labor in the sum of $68.01 is the separate and personal claim of said White against this defendant and not the joint claim of said plaintiffs."

It is further alleged for a second, further and separate defense and cross-petition that the defendants squandered and disposed of $445 of said coins and that aside from the other property turned over to defendant in settlement defendant accepted the note of J. W. White, dated July 20, 1909, payable one year after date, for the sum of $263.80, together with interest at the rate of ten per cent. per annum after date until paid and all costs, expenses and attorneys' fees in case of suit; that said note is due and unpaid; and that in said settlement there was yet due the further sum of $15.99 and that said promissory note and balance has not been paid and for which judgment is prayed. The plaintiffs filed their reply to the answer and cross-petition denying each and every allegation of new matter or thing contained therein. During the trial the attempt to recover $32.50 alleged to have been obtained by threats and duress from Alma White was abandoned.

It thus appears from the pleadings that the gold coins were uncovered by plaintiffs on July 13, 1909, while they were in the employ and engaged in repairing defendant's cellar and upon his premises and while the cellar was in the exclusive possession and occupancy of defendant; that plaintiffs kept their finding secret and thereafter removed the money, each taking some of the coin and severally spending separate amounts, which aggregated $445, and depositing $1,300 to the credit of Stockwell, $32.50 was given to the wife of J. W. White and $2,200, the remander of the coin, was deposited in the bank to the credit of White. The evidence shows that the cellar in which the money was found was built by defendant in 1890 by the enlargement of a small cellar eight or nine feet square into a cellar 29 feet, 6 inches long, by 11 feet, 9 inches wide, and 7 feet in depth, the length of the cellar running from the store outwards, the width running along the end of and adjoining the store. It was constructed by excavating into the ground a few feet and putting up a ridge pole and log coverings and covering them all over with earth a few feet in thickness. For a year or two after its construction there was an outside opening to the cellar, but that was, in a very short time after its construction, entirely closed up and thereafter the only access to the cellar was through the building occupied as a store and also by Taylor and his family as a dwelling, the entrance going from the store through a room occupied as a sleeping room; at the time of uncovering the jar of coins the plaintiffs were cleaning out the debris and earth in the bottom of the cellar as the result of a water spout which occurred a day or two before and which had caved and washed in the walls of the cellar and in replacing a post, which, in part, supported the ridge pole of the cellar. The evidence on the part of defendant tended to show—indeed Mr. and Mrs. Taylor both testified to the fact—that, owing to his place of business being forty-nine miles from the nearest town, and they thought they were without protection, he deposited the coins in the jar and then secreted it

in the bottom of the cellar at the place where plaintiffs un-
covered it; that the coins belonged to Mr. Taylor and were
put in the jar and secreted in the bottom of the cellar in
1896, with six or seven inches of dirt over it, laying the
jar on its side, and in which place and condition the evi-
dence tended to show that the plaintiffs found it.

It will be observed that the question of misjoinder of
plaintiffs and causes of action was raised both by demurrer
and answer and for that reason the question of misjoinder
was not waived, whether upon the face of the petition it was
demurrable for misjoinder or not. The question is pre-
served in the case and runs through the record. (Gilland
v. Union Pacific Ry. Co., 6 Wyo. 185, 43 Pac. 508; Mau v.
Stoner et al., 15 Wyo. 109, 87 Pac. 434, 89 Pac. 466; Gen-
esco v. Walker et al., 7 Kan. App. 748, 53 Pac. 379). It
arises upon the court's refusal of defendant's request to
give the following instructions to the jury, to-wit:

Instruction No. 22. "The jury cannot find for the plain-
tiffs for the amount of the check of $2,235.00 given by
plaintiff, J. W. White, to the defendant on the 20th day of
July, A. D. 1909, if you find that the said check was drawn
on the personal funds of said J. W. White and was his
personal property and not the property of said White and
Stockwell jointly."

Instruction No. 23. "If the jury find from the evidence
that the check for $2,235.00 drawn on July 20th, 1909, by
the plaintiff, White, in favor of the defendant, Taylor, was
drawn by the said White against his own personal account
and that the money represented by it was his own personal
property and not the joint property of the said White and
Stockwell, then you will find for the defendant."

Instruction No. 24. "The jury cannot find for the plain-
tiffs in the sum of $1,300.00, the amount of the check given
by Reuben Stockwell, one of the plaintiffs, if they find that
said check represented and was drawn on the personal
funds in the bank belonging to said Reuben Stockwell and
that the said plaintiff White had no interest therein."

Instruction No. 25. "The jury cannot find for the plaintiffs for the amount of the order of $68.01 on defendant signed by J. W. White if they find that the said order was drawn on the moneys due to said White personally and not to said plaintiffs Stockwell and White jointly, and if the defendant Stockwell had no interest therein."

There was evidence tending to support the allegations of the answer with reference to the separate and individual interests, if any, of plaintiffs and that the claims to the money deposited in the bank and other items for which recovery is sought were separate and individual and not joint. It was a question upon the evidence as to whether Stockwell retained any interest in the twenty-two hundred dollars kept by White, but we think it clearly appears from the evidence that the thirteen hundred dollars deposited in the bank to Stockwell's credit was turned over to him absolutely and became his property as between the plaintiffs. The evidence further shows that there was no joint ownership, either general or special, in any of the articles or personal property which defendant obtained from either of the plaintiffs. The evidence is undisputed that White was not present when the defendant is said to have threatened Stockwell with criminal prosecution and the latter turned over his check, but, on the contrary, Stockwell came to Laramie from Rock Creek on July 20, 1909, with defendant, went to the bank and gave his check to the defendant for the $1,300, that being the amount which White had deposited in the bank to his (Stockwell's) credit. This transaction occurred before anything had been said to White about finding the coins. Subsequently and on the same day White, having in the meantime been found, after an interview with defendant separate and apart from Stockwell, gave his check to Taylor for $2,235.00.

It is not disputed in the evidence that White's check included $35 which he had on deposit in the bank to his credit prior to and at the time of the deposit of the coin and to that extent at least Stockwell had no interest in the funds represented by the check. Had proffered instructions num-

bered 22 been given it would have submitted to the jury the question whether the check was drawn upon the personal funds of White or the joint funds of White and Stockwell. It was the theory of the defendant that as between White and Stockwell there was no joint interest in the funds represented by White's check, and we think that was an issue of fact which should have been submitted to the jury. What is here said applies with equal force to proffered instructions numbered 23 and 25, for if given the court would have submitted to the jury the question whether the money represented by White's check was his own personal property or the joint property of White and Stockwell. When it is remembered that upon the issues the right to recover depended upon proof of a joint and not a personal or several and independent cause of action, the error in refusing these instructions is apparent. The issue was squarely presented and the question was one of fact and for the jury to find from the evidence whether plaintiffs had proven a joint ownership in any cause of action. The same principle applies to proffered instruction numbered 24 with reference to the funds represented by Stockwell's check for $1,300, and to White's order for $68.01 on his employer for a balance due him for wages. If the funds represented by Stockwell's check was his individual property, then White had no right to any verdict, joint or otherwise, for their alleged conversion, nor had Stockwell any interest in the indebtedness represented by White's order for $68.01.

The rule is well settled that a joint recovery when properly challenged cannot be sustained by proof of separate, several and independent causes of action in favor of separate plaintiffs. It was so at the common law where the question of misjoinder could be raised by a general demurrer when the defect was apparent on the face of the petition, or where the proof failed to prove the cause of action as alleged. Our statutory provision supplants the common law in that it requires a party who seeks to avail himself of such defect to make timely objection in the manner prescribed by statute. Upon the record here the

defendant placed himself squarely within the provision of the statute and was entitled to have the proffered instructions given upon the defense as pleaded and the evidence in support of such defense. The refusal to give the instructions as requested was error, for it in effect deprived defendant of the right to defend on statutory grounds, and we are of the opinion that the error of the court in its refusal to give each of the proffered instructions above set out was prejudicial and that the judgment should be reversed unless such error was covered and cured by the instructions which were given.

Instruction number nine, which was given over defendant's objection, is as follows, viz:

"The court instructs the jury that to entitle the plaintiffs to recover, the jury must find from the preponderance of the evidence: First, that the defendant was not the true owner of the said gold coin found by the plaintiffs. Second, that the plaintiffs, at the time of the alleged conversion, were in the joint possession of said gold coins so found in the cellar of the defendant; that no final settlement and division of said gold coins had been had or made by and between plaintiffs, but that, although the actual possession at the time of the alleged conversion was unequal, said gold coins had not been finally divided and the final settlement reached between plaintiffs, but were jointly owned by plaintiffs. Third, that the plaintiffs have each an interest in the subject of this action and in obtaining the relief demanded, which interest has never been divided or apportioned, but is a joint interest of the plaintiffs. Fourth, that the plaintiffs were required and did pay to defendant money and did deliver personal property to the defendant for joint protection and benefit of both, through and because of threats, if any, made by the defendant. By this instruction the court informs you that if you find for the defendant on any or either of the counts specifically mentioned in this instruction, it is your duty to find for the defendant and to find as directed in instruction number 13," which refers to the measure of damages, "but if you find from the evidence

for the plaintiffs on each and all of the counts above speci-
fied, then it will be your duty to find in damages for the
plaintiffs."

We think this instruction fell far short of the idea sought
to be conveyed by the proffered instructions and is not
curative of the error of the court in refusing to give them;
upon the facts it may be conceded that defendant could not
defeat plaintiff's right to the possession of the coin unless
he was the owner, or otherwise had the right of possession,
but we are of the opinion that the other part of the instruc-
tion tended to mislead the jury in that it attempted to fix
the liability of the defendant to plaintiffs jointly for the
value of all the coins, notwithstanding the evidence showed
the final division of at least a part of the coins. There is
evidence from which perhaps it might have been found
that there had been no final settlement between the plain-
tiffs as to the interest, if any, retained by Stockwell in and
to the $2,200 deposited in the bank to the credit of White;
there is some evidence tending to show that that matter
was left by them for future adjustment. The right of
plaintiffs, if any, to adjust that matter as against defendant
must of necessity have rested upon proof of their owner-
ship and right of possession as against him, a question
which we do not deem necessary upon the record to dis-
cuss for the purpose of deciding this case.

There are other assignments of error, only two of which
we refer to. Stockwell and Mrs. White were both per-
mitted to testify, over objection, that the evidence was hear-
say, to statements made not in the presence of the defend-
ant. The rulings of the court in these respects constituted
error, but whether prejudicial so as to require a reversal
of the judgment upon these grounds alone need not be
further discussed, for we apprehend that such error will not
occur again. On the other grounds herein discussed the
judgment will be reversed and the case remanded for fur-
ther proceedings not inconsistent with the views herein ex-
pressed.                              *Reversed and remanded.*

Potter, C. J., and Beard, J., concur.

ON PETITION FOR REHEARING.

Per Curiam.

The opinion in this case is reported in 145 Pac. Rep. 743. The defendants in error have filed a petition for a rehearing and allege the following grounds therefor: First, that error was not committed; and second, that if error was committed it was harmless, and therefore not sufficient grounds for reversal. This petition does not disclose that any new point is here raised and their brief merely contains a new discussion of misjoinder and the effect thereof, and by a reference to the opinion filed both questions were covered and decided. We have, however, looked into the case further in view of the brief in support of the petition and do not recede from the views expressed in the opinion filed. *Rehearing denied.*